492

NEGIN, APPELLEE, *v.*
BOARD OF BUILDING AND ZONING APPEALS
OF THE CITY OF MENTOR ET AL., APPELLANTS.

[Cite as Negin v. Bd. of Bldg. and Zoning Appeals. (1982),
69 Ohio St. 2d 492.]

(No. 81-180—Decided February 26, 1982.)

*Mr. Morton S. Negin* and *Mr. Jeffery I. Sherwin,* for appellee.

*Mr. Daniel F. Richards* and *Mr. Michael C. Lucas,* for appellants.

*Per Curiam.* This case originated as an appeal from an administrative decision brought pursuant to R. C. Chapter 2506. The question presented by such an appeal challenging the constitutionality of a zoning ordinance as applied is "whether the ordinance, in proscribing a landowner's proposed use of his land, has any reasonable relationship to the legitimate exercise of the police power by the municipality." *Mobil Oil Corp.* v. *Rocky River* (1974), 38 Ohio St. 2d 23.

It is virtually axiomatic that the enactment of zoning laws by a municipality is an exercise of the police power to provide for the public health, safety, morals, or general welfare. *Garcia* v. *Siffrin* (1980), 63 Ohio St. 2d 259. In order for such laws to avoid conflict with due process principles, *Euclid* v. *Ambler Realty* (1926), 272 U. S. 365, a zoning ordinance must be general in its application, the classification as to which the property may be devoted must be reasonable, and the pre-existing vested rights must be recognized and protected. *Smith* v. *Juillerat* (1954), 161 Ohio St. 424. This power to classify property will not be interfered with by the courts unless such power is exercised in "such an arbitrary, confiscatory or unreasonable manner as to be in violation of constitutional guarantees." *Willott* v. *Beechwood* (1964), 175 Ohio St. 557, paragraph three of the syllabus.

In an appeal brought pursuant to R. C. Chapter 2506, from the denial of an application for a variance by a zoning board of appeals, there is a presumption that the board's determination is valid, and the burden of showing invalidity of the board's determination rests on the party contesting that determination. *C. Miller Chevrolet* v. *Willoughby Hills* (1974), 38 Ohio St. 2d 298. In order to overcome this presumption, appellee argued below, *inter alia,* that appellant's determination amounted to confiscation of Sublot 728.[3] In support of this

---

[3] Appellee also argues that appellant's denial of his application for a variance and a building permit constituted a denial of equal protection and an abuse of discretion. Given our determination of the confiscation issue, we need not address the equal protection and abuse of discretion issues.

contention, appellee points to evidence adduced at the Court of Common Pleas appeal that Sublot 728 was rendered useless by denial of the variance.

In particular, in appellee's favor is the testimony of Alvin E. Beasley, Planning Director of the city of Mentor, Ohio, that the only other uses for Sublot 728 were to "[j]oin it with another parcel and use it * * * ," or for a "[c]hurch or school, this kind of thing * * * ." Additionally, appellee cites the testimony of Roger D. Ritley, real estate appraiser and consultant, who was employed by the city of Mentor to appraise the Twelfth Salida Subdivision, in which Sublot 728 is located, that the other purposes to which Sublot 728 could be used, other than as a single family residence, were: "[o]nly as acreage residence land for property to adjoin either side, if one is considering buying it—assemblage potential to people on the rear and persons south and parties to the north. Also, it may eventually have some purpose for recreation use by a community or neighborhood association. Those are alternative types of use."

Appellants give no other uses for Sublot 728 if the variance is denied and cite the testimony of Ritley on this point. We find that these suggested uses are so illusory and unlikely as to render Sublot 728 effectively useless. The likelihood that a church or school will be built upon a lot which the board has denied previously a variance to build a single family house is highly speculative at best. Likewise, the potential purchase of the lot by a homeowner's association, which the record does not indicate to exist, is equally speculative. The net effect is that appellee is "totally restricted" in the use of his property in violation of constitutional guarantees. *Superior Uptown* v. *Cleveland* (1974), 39 Ohio St. 2d 36, 39.

It is uncontroverted that appellee's lot was platted and has been held in single and separated ownership since before the enactment of the subject zoning ordinance. As such, a nonconforming use as to minimum area and frontage requirements for home construction is established and may be continued. *Curtiss* v. *Cleveland* (1959), 170 Ohio St. 127. See, also, *Morris* v. *Los Angeles* (1953), 116 Cal. App. 2d 856, 254 P. 2d 935; *Hyndiuk* v. *Chicago* (1973), 14 Ill. App. 3d 1057, 304 N.E. 2d 6; *Robyns* v. *Dearborn* (1954), 341 Mich. 495, 67 N.W. 2d 718. The requirement of a municipal ordinance that a landowner

purchase additional property before he is permitted to improve a substandard lot, which was platted and held in single and separate ownership prior to the enactment of the ordinance, renders that lot useless for any practical purpose. This would also be the case if the only use of the lot is for sale to an adjacent landowner. The rendering of such a lot useless for any practical purpose goes beyond mere limitation of use and becomes a confiscation. *State, ex rel. Killeen Realty,* v. *E. Cleveland* (1959), 169 Ohio St. 375; *Long Island Land Research Bureau* v. *Young* (1957), 159 N.Y. Supp. 2d 414, 7 Misc. 2d 469; *Graves* v. *Bloomfield Planning Bd.* (1967), 97 N.J. Super. 306, 235 A. 2d 51; 2 Rathkopf, The Law of Zoning and Planning, Sections 32.02, 32.09[1]; 6 Rohan, Zoning and Land Use Controls, Section 42.03[1][a]; 2 Anderson, American Law of Zoning (2 Ed.), Section 9.62.

For the aforementioned reasons, we hold that Section 150.176 of the Mentor Code of Ordinances as applied to appellee has no reasonable relationship to the legitimate exercise of the police power by the city of Mentor. Accordingly, the judgment of the Court of Appeals is affirmed.

*Judgment affirmed.*

W. Brown, Sweeney and C. Brown, JJ., concur.

Celebrezze, C. J., concurs in the judgment.

Locher, Holmes and Krupansky, JJ., dissent.

Celebrezze, C. J., concurring. Based upon the facts in this case, I reluctantly concur in the judgment only. I empathize with the landowner because the ordinance would require that he purchase additional land in order to build on his property. However, for the following reasons, I do not agree with the far reaching implications of the majority opinion.

As stated by the majority, the issue is whether the ordinance has any relationship to the legitimate exercise of the police power. Although not mentioned by the majority opinion, the record indicates that experts testified concerning adverse effects of allowing building on substandard size lots. The problems identified included impairment of storm sewer drainage, increased traffic and the consequential dangers of intensified

density. Requirements for a minimum area are related to controlling density and its accompanying problems. This type of regulation traditionally has been a legitimate exercise of the police power. *State, ex rel. Grant,* v. *Kiefaber* (1960), 114 Ohio App. 279, 292, affirmed 171 Ohio St. 326.

The ordinance, which requires a minimum frontage of 75 feet and an area of 15,000 square feet, is not unreasonable. Much larger lot sizes have been upheld. *Kiefaber, supra.* The parcel at issue contains less than one-third of the area required. According to the majority opinion, appellee is allowed to build on the parcel. What is the limit? The majority opinion sweeps with too broad a brush. Landowners with one-quarter or even one-tenth of the required area may be able to ignore zoning requirements and build on postage stamp size parcels, contrary to public welfare.

It is important to note that the parcel in question is undeveloped land and appellee desires to build on it. The majority opinion concludes that a nonconforming use was established as to the minimum area and frontage requirements for home construction. How can there be a nonconforming use for home construction when the land is vacant? A nonconforming use means a use " * * * which existed at the time of the passage of the zoning ordinance and continued thereafter without interruption and without material change * * * ." *Akron* v. *Chapman* (1953), 160 Ohio St. 382, paragraph three of the syllabus. In *Smith* v. *Juillerat* (1954), 161 Ohio St. 424, paragraph four of the syllabus, the court stated:

"Where no substantial nonconforming use is made of property, even though such use is contemplated and money is expended in preliminary work to that end, a property owner acquires no vested right to such use and is deprived of none by the operation of a valid zoning ordinance denying the right to proceed with his intended use of the property." The facts in this case do not qualify for a nonconforming use. Before a nonconforming use related to residential lot size can arise, completion or virtual completion of the residence is necessary. *State, ex rel. Martin Land Dev. Co.,* v. *Clepper* (1961), 113 Ohio App. 375, 379.

Declaring a nonconforming use as to area required in disregard to current zoning mandates could have serious implica-

tions. Again, what is the limit of such a proposition? For example, consider the typical zoning ordinance which sets minimum space for off street parking in a commercial zone. *Brown* v. *Cleveland* (1981), 66 Ohio St. 2d 93. A landowner could ignore the requirements and build a convenience store or gas station without adequate parking space. Clearly, the resulting traffic congestion in the street could present serious dangers to the public welfare.

Furthermore, the majority opinion cites *Curtiss* v. *Cleveland* (1959), 170 Ohio St. 127, for establishing a nonconforming use as to area requirements. However, *Curtiss* concerned a pre-existing retail business, a use which was allowed to continue. However, in the case at bar, the land is undeveloped but the use will change with the construction of a residence. Thus, the authority cited does not support the proposition set forth by the majority opinion.

KRUPANSKY, J., dissenting. The majority holds Section 150.176 of the Mentor Code of Ordinances as applied to appellee to be confiscatory and not reasonably related to the legitimate exercise of the police power by the city of Mentor. I do not agree, and therefore, must respectfully dissent.

As stated in the majority opinion: the zoning ordinance at issue was enacted in 1963; appellee's father acquired Sublot 728 in 1966; and the appellee inherited Sublot 728 in 1971. It is clear from these facts that the challenged zoning ordinance had been in effect for three years prior to the acquisition of Sublot 728 by appellee's father, and eight years prior to appellee's procurement of the land. Simply stated, the appellee and his father obtained this plot of land *with notice* of the restrictions placed upon its potential use by Section 150.176, and therefore, should not be permitted to complain about these limitations now. The Court of Appeals for Cuyahoga County summarized this premise thusly:

"A purchaser who acquires real property for a purpose not permissible under current zoning restrictions cannot argue persuasively against the constitutionality of the ordinance based on his loss of profit due to his failure to obtain a change in zoning." *Mintz* v. *Pepper Pike* (1978), 57 Ohio App. 2d 185.

The logic espoused in *Mintz* applies equally to the case at

bar. The appellee has not had any pre-existing vested rights interfered with by this zoning ordinance. Furthermore, it is difficult to understand how the application of this zoning ordinance to appellee's property can be said to be "confiscatory" when the appellee has *the exact same options* for his land as when the tract first came into his possession.

In sum, I feel the Mentor Board of Building and Zoning Appeals acted properly in denying the appellee a variance and building permit for Sublot 728. In view of my belief I would have reversed the Court of Appeals.

LOCHER and HOLMES, JJ., concur in the foregoing dissenting opinion.