CLARK ET AL., APPELLEES, *v.* VILLAGE OF WOODMERE ET AL., APPELLANTS.

(No. 49451 — Decided September 30, 1985.)

*Samuel S. Perry,* for appellees.

*Almeta A. Johnson,* law director, for appellants.

MARKUS, P.J. The defendant-village appeals from a declaratory judgment that the plaintiff-landowner may build a residence on a plot consisting of two adjoining parcels. In so ruling, the trial court held that the village's zoning ordinances unconstitutionally restricted the minimum area and width for this residential property. The landowner failed to present sufficient evidence to support that conclusion, so we reverse and dismiss the action.

The trial evidence consisted of (a) brief testimony by the plaintiff-landowner, (b) the village's zoning map and zoning ordinances, and (c) minutes from village administrative bodies which considered the plaintiff-landowner's request for a variance. The trial judge personally viewed the landowner's property, but his observations are not evidence. Cf. *Lacy* v. *Uganda Investment Corp.* (1964), 7 Ohio App. 2d 237 [29 O.O.2d 177]; *State* v. *Jones* (Apr. 12, 1979), Cuyahoga App. No. 37862, unreported. No expert witnesses testified, and neither party offered any direct evidence to show the village's purposes in adopting the challenged ordinances.

In 1977, the owner of four contiguous lots in the defendant-village agreed to sell two of those lots to the' plaintiff-landowner for $8,000. The plaintiff-landowner paid the balance of the purchase price and received the seller's deed in January 1978. He recorded that deed in June 1978.

The landowner's two rectangular lots each has a frontage of 48.4 feet and a depth of 225 feet, for a total frontage of 96.8 feet and a total area of one-half acre (21,780 square feet). Since 1959, the village's zoning ordinances have required lots to have a width of 145 feet and a three-quarter-acre area (32,670 square feet) for single-family dwellings. Woodmere Village Ordinances Sections 151.15(c) and 151.15(d). The seller's residual property also lacks sufficient width or area to satisfy these ordinances. The village denied the plaintiff-landowner's application for a permit to construct a house there. He then applied to the village Planning and Zoning Commission for a variance. The commission denied his request. The landowner appealed that decision to the village council, which rejected his appeal. He then commenced this action, seeking a declaration that the ordinances unconstitutionally restricted his use of his land.

## I

The village's first assignment of error asserts that "[t]he trial court erred in refusing to allow a jury trial as timely demanded." R.C. 2721.10 provides:

"When a * * * [declaratory judgment action] involves the determination of an issue of fact, such issue may be tried and determined in the same manner as issues of fact are tried and determined in other civil actions in the court in which the proceeding is pending."

A jury trial is necessary only when the case requires the resolution of factual issues which are triable to a jury in comparable civil actions. *Erie Ins. Group* v. *Fisher* (1984), 15 Ohio St. 3d 380, 381-382 (following *Travelers Indemn. Co.* v. *Cochrane* [1951], 155 Ohio St. 305 [44 O.O. 302]). R.C. 2311.04 defines the right to a jury trial in other civil cases:

"Issues of law must be tried by the court, unless referred as provided in the Rules of Civil Procedure. Issues of fact arising in actions for the recovery of money only, or specific real or personal property, shall be tried by a jury, unless a jury trial is waived, or unless all parties consent to a reference under the Rules of Civil Procedure.

"All other issues of fact shall be tried by the court, subject to its power to order any issue to be tried by a jury, or referred."

The present action seeks neither money nor specific real or personal property. It challenges the validity of municipal ordinances, so it resembles a non-jury equity proceeding to rescind allegedly invalid agreements. *Cross* v. *Ledford* (1954), 161 Ohio St. 469 [53 O.O. 361] (no jury for rescission case); cf. *Huntington Natl. Bank* v. *Heritage Investment Group* (1983), 12 Ohio App. 3d 113 (no jury for foreclosure case); *Pyromatics, Inc.* v. *Petruziello* (1983), 7 Ohio App. 3d 131 (no jury for injunction case).

The landowner originally requested money damages for an asserted civil rights claim, but the landowner apparently withdrew that claim before trial. Therefore, we need not decide whether that claim would have required a jury trial. Cf. *Burton* v. *Middletown* (1982), 4 Ohio App. 3d 114, 118 (trial court correctly dismissed demand for a jury trial where the only issues requiring a jury had been dismissed). We overrule the village's first assigned error.

## II

In its second and third assignments of error, the village contends (a) the court erred by denying its motion for a directed verdict, and (b) "[t]he judgment of the trial court is against the manifest weight of the evidence."

The village council presumably decided that the challenged legislation is within its general police powers and is rationally related to the public health, safety and welfare. The courts presume that such legislative action is neither unreasonable nor arbitrary. *Curtiss* v. *Cleveland* (1959), 170 Ohio St. 127 [10 O.O. 2d 85], paragraph two of the syllabus. Thus, zoning legislation is presumptively valid. See *Pepper Pike* v. *Landskroner* (1977), 53 Ohio App. 2d 63, 70 [7 O.O.3d 44]:

"A person wishing to attack an ordinance as unconstitutional has the burden of proof and may not rely on mere allegations or conclusions of law that the ordinance is not based on health, safety, morals or general welfare, but must introduce competent and relevant evidence to support his position.* * *"

In this case, the landowner failed to present any evidence that the village's application of the challenged ordinances to his property was unconstitutional. He offered no evidence to deny that they are rationally related to the public health, safety, and welfare. The landowner argues without any supporting evidence that the width requirement is

intended to allow space for a filter bed, a well, and a septic tank. He testified that he could use water and sewer pipes under the adjacent roadway, so he would not need those individual facilities.

Assuming that he correctly identified the purpose for the disputed ordinances, he failed to show that he would have access to those nearby water and sewer lines. Those lines are private, with restricted accessibility. He also failed to show that his use of those lines would adequately protect the public health. The village council might have determined that the specified lot width was necessary on a street with sewers to prevent an overload on the sewage system. In the absence of any contrary evidence, the ordinance is presumed valid.

The trial court found that some other dwellings had frontages shorter than 145 feet. However, there is no evidence in the record to support that finding. If they do exist, the record does not disclose whether they are non-conforming uses which predate the challenged ordinances.

Furthermore, we cannot assume that the ordinances' sole purpose was to provide space for a filter bed, septic tanks and wells. The landowner offers no explanation for the minimum *area* requirement which he would violate by building a residence there. Other permissible objectives for these ordinances could include (1) control of population density, *State, ex rel. Grant,* v. *Kiefaber* (1960), 114 Ohio App. 279 [19 O.O.2d 207], paragraph five of the syllabus; (2) ease of access for firefighting equipment, cf. *State, ex rel. Jack,* v. *Russell* (1954), 162 Ohio St. 281, 287 [55 O.O. 167]; and (3) economic considerations related to increased aesthetic values. See, *e.g., Pritz* v. *Messer* (1925), 112 Ohio St. 628, 638. The landowner did not address these or any other possible purposes, much less prove that they would

be unreasonable here. Thus, he failed to meet his burden by clearly showing the unconstitutionality of the ordinance.

Contrary to the landowner's assertions, the ordinances do not operate as a "taking" of his property. Reasonable restrictions on the use of property are not confiscatory governmental action. See, *e.g., Pritz* v. *Messer, supra,* at paragraph one of the syllabus. Zoning regulations that effectively make a landowner's property valueless without any corresponding public benefit can constitute unconstitutional takings. See, *e.g., Brockman* v. *Morr* (1960), 112 Ohio App. 445 [16 O.O. 2d 341]; *Cleveland Builders Supply Co.* v. *Garfield Hts.* (1956), 102 Ohio App. 69 [2 O.O.2d 65]; *Eutopia Realty, Inc.* v. *Cleveland Hts.* (C.P. 1938), 27 Ohio Law Abs. 420.

In this case, the landowner testified that he had "no use" for the property if he could not obtain a variance to build a residence. However, his property is useful to satisfy the neighboring seller's duty to comply with the same zoning ordinances. In effect, his neighbor has impermissibly divided the total property so that neither part complies with valid regulations. The courts will not assist that apparently deliberate attempt to circumvent the village's lawful authority.

The landowner mistakenly relies on *Negin* v. *Bd. of Bldg. & Zoning App.* (1982), 69 Ohio St. 2d 492 [23 O.O.3d 423]. In *Negin,* the court found that a zoning ordinance effectively required the landowner to purchase additional land or to sell his lot to an adjacent landowner. It found that this requirement rendered that lot "useless for any practical purpose." *Id.* at 497. However, in *Negin,* the property "was platted and held in single and separate ownership prior to the enactment of the ordinance." *Id.* "As such, a nonconforming use as to minimum area and frontage requirements * * * [was] established," even though the owner

had not yet built on the land. *Id.* at 496. Here, the zoning ordinances existed prior to any consideration by the landowner's neighbor that he might sell this parcel. They existed long before this landowner acquired any interest in the property.

Accordingly, the village's second and third assigned errors have merit. We reverse and enter final judgment in the village's favor by dismissing the landowner's action.

*Judgment reversed.*

PRYATEL and CORRIGAN, JJ., concur.