SCHREINER, TRUSTEE, APPELLEE, *v.* RUSSELL TOWNSHIP BOARD OF TRUSTEES, APPELLANT.

(No. 88-G-1486—Decided
January 16, 1990.)

*Gerald J. Patronite,* for appellee.
*Forest W. Burt,* assistant prose-
cuting attorney; *Andrews & Todoroff*
and *J. Melvin Andrews,* for appellant.

FORD, J. Appellee, Mary J.
Schreiner, is the trustee for the Paul
Johnson Trust. The portions of the
trust corpus that concern this court are
twelve residential lots located in the
"Hillbrook Estates Subdivision,"
which is situated in Russell Township.
Appellee's lots, along with the rest of
the subdivision, were subdivided,
platted and improved with streets and
certain utilities in the 1950s. There is
no dispute that all twelve lots are held
as individual, taxable lots by appellee.

In 1974, Russell Township enacted
Zoning Resolution Section 4.5 *et seq.*
This resolution required a minimum
residential lot size of five acres for the
area of Russell Township which in-
cluded the Hillbrook subdivision. The
regulations further required that lots
of record, held in contiguous single
ownership and non-conforming to the
minimum lots size requirement, be
combined to conform to the zoning
regulations. The resolution continued:

"No lot or lots of record which are
held in contiguous single ownership,
and which are non-conforming to the
regulations for such district shall be
sold, assigned, or transferred until
such lot or lots of record are re-
subdivided to conform to the regula-
tions for such district."

Appellee requested that the
Russell Township Zoning Inspector
declare the twelve lots to be separately
buildable and saleable lots. This re-
quest was denied. Subsequently, ap-
pellee appealed this denial before the
Russell Township Zoning Board of Ap-
peals. The board similarly denied the
request for a variance on July 24, 1987.

Appellee next appealed the board's
decision to Geauga County Court of
Common Pleas. Additionally, appellee
brought a separate declaratory judg-
ment action, using the same case
number, in which appellee asked the
court to declare that her lots were
separately buildable and saleable, and
that the current minimum lot area re-
quirements of the Russell Township
zoning resolution were unconstitu-
tional as it pertained to her lots.

At trial, appellee presented evi-
dence that the twelve lots in question
were irregularly shaped parcels of
land, whose natural boundaries had
been determined by the unique
topography of the subdivision. Appel-
lee produced an expert who testified
that Russell Township's zoning resolu-
tion would cause a diminution of value
of appellee's lots of $200,000.

After consideration of the evi-
dence, the trial court granted judg-
ment, in the declaratory judgment ac-
tion, to appellee, stating that the
twelve nonconforming lots were not
subject to the Russell Township
minimum lot size requirement, and
that the pertinent zoning resolution
was unconstitutional as it applied to
appellee's lots. (Appellee's appeal of
the decision of the Russell Township
Zoning Board of Appeals was dis-
missed.)

Appellant, the Russell Township Board of Trustees, now appeals the decision of the Geauga County Court of Common Pleas and raises the following assignments of error:

"1. The trial court erred in finding and declaring that Russell Township Zoning Resolution, Sections 4.5(A) and 7.9 are unconstitutional on their face and as applied to appellees [*sic*] property regarding minimum area requirements.

"2. The trial court erred in finding appellees [*sic*] twelve nonconforming lots were not subject to the Russell Township Zoning Resolution minimum lot size requirements of five acres."

In appellant's first assignment of error, it contends that the trial court erred in finding that the Russell Township zoning resolution was unconstitutional as it applied to appellee's properties. The trial court based its opinion on the rationale expressed in the plurality opinion of *Negin* v. *Bd. of Bldg. and Zoning Appeals* (1982), 69 Ohio St. 2d 492, 23 O.O. 3d 423, 433 N.E. 2d 165, in which the plurality held the following:

"It is uncontroverted that appellee's lot was platted and has been held in single and separated ownership since before the enactment of the subject zoning ordinance. As such, a nonconforming use as to minimum area and frontage requirements for home construction is established and may be continued. *Curtiss* v. *Cleveland* (1959), 170 Ohio St. 127. * * * The requirement of a municipal ordinance that a landowner purchase additional property before he is permitted to improve a substandard lot * * * renders that lot useless for any practical purpose. * * * The rendering of such a lot useless for any practical purpose goes beyond mere limitation of use and becomes a confiscation.* * *" *Id.* at 496-497, 23 O.O. 3d at 425-426, 433 N.E. 2d at 169.

The trial court also relied on *Neundorfer* v. *Munson Twp. Bd. of Trustees* (July 9, 1987), Geauga C.P. Nos. 86 M 377 and 387, which was affirmed by this court (*Neundorfer* v. *Munson Twp. Bd. of Trustees* [Oct. 7, 1988], Geauga App. No. 1418, unreported) on procedural grounds.

Appellant challenges the trial court's ruling on several grounds. Initially, it attempts to distinguish this case from *Negin, supra,* on the facts of the respective cases. *Negin* concerned a Mentor ordinance in which owners of nonconforming lots were required, when practicable, to purchase the adjoining lot and consolidate the two in order to create a conforming parcel. As appellant correctly notes, appellee, in the case *sub judice,* is not compelled to purchase any additional land; instead, appellee is only being asked to consolidate previously existing parcels.

Appellant also argues that the trial court's decision is in contravention of the general dictates of zoning law construction in the state of Ohio. As the Ohio Supreme Court held in *Willott* v. *Beachwood* (1964), 175 Ohio St. 557, 26 O.O. 2d 249, 197 N.E. 2d 201:

"The power of a municipality to establish zones, to classify property, to control traffic and to determine land-use policy is a legislative function which will not be interfered with by the courts, unless such power is exercised in such an arbitrary, confiscatory or unreasonable manner as to be in violation of constitutional guaranties." *Id.* at paragraph three of the syllabus.

Zoning legislation is presumptively valid, *Pepper Pike* v. *Landskroner* (1977), 53 Ohio App. 2d 63, 7 O.O. 3d 44, 371 N.E. 2d 579, and "[z]oning ordinances can validly impose minimum area and width requirements for residential use if they do not effectively render the property useless." *Clark* v. *Woodmere* (1985), 28 Ohio App. 3d 66, 28 OBR 107, 502 N.E. 2d 222, paragraph two of the syllabus.

Appellant's arguments are well-taken, but are ultimately unavailing. Appellant is correct in stating that the *Negin* decision was a plurality, yet fails to note that other cases, such as *Neundorfer* and *Clark, supra,* have adopted and applied the plurality decision and demonstrated support for its position. Nor are appellant's attempts at distinguishing *Negin* from this case persuasive. In both instances, zoning restrictions attempted to "totally restrict" the owners in the use of their property absent compliance with the zoning restrictions. Further, these restrictions render the property as it is presently situated, "effectively * * * valueless," *Clark,* at 68, 28 OBR at 109, 502 N.E. 2d at 225, unless literal compliance with the zoning ordinance obtains which would result in a considerable diminution of property value.

As the Ohio Supreme Court noted in *State, ex rel. Killeen Realty Co.,* v. *East Cleveland* (1959), 169 Ohio St. 375, 380, 8 O.O. 2d 409, 412, 160 N.E. 2d 1, 5, " '[a]t some undefinable point, regulation of property shades into taking of property.' " (Emphasis omitted.) This point is reached regardless of the presumption of validity afforded to zoing legislation. "Zoning regulations that effectively make a landowner's property valueless without any corresponding public benefits can constitute unconstitutional takings" and result in the crossing of the line of acceptability between property regulation and confiscation. *Clark,* at 68, 28 OBR at 109, 502 N.E. 2d at 225. (There may, in fact, be corresponding public benefits which would aid in finding that the balancing enumerated in *Clark* requires that the legislation be held valid, despite its confiscatory nature. However, appellant has not demonstrated these factors in the record. Were appellant to have presented evidence of a limited water supply, substrata soil and shale conditions, and sanitation difficulties before the trial court, instead of merely at township trustee meetings, the trial court could well have found that there were public benefits to Russell Township residents that correspond to the zoning legislation. In this case, however, appellant failed to produce this evidence before the trial court in this declaratory judgment action, and the court was consequently unable to consider it.)

Appellee's property has been platted and subdivided since the 1950s, according to a specific and detailed planning scheme which took into effect the topography of the subdivision and the natural boundaries of the property. Evidence indicates that the developer laid and maintained its own roads (until 1964) so that the roads would conform to the usual layouts and needs of the properties. Further, appellee contends that some utilities have been connected to the properties (although the evidential table does not specify what these utilities are). Clearly, appellee can demonstrate a nonforming use for her properties. Consequently, and under the rationale expressed by the plurality in *Negin* and, by implication, in *Clark,* appellant's zoning legislation, in this instance, resulted in a confiscation and, as such, is unconstitutional.

Appellant's first assignment is without merit.

Appellant's second assignment of error asserts that appellee's twelve nonconforming lots should have been found to be subject to the Russell Township zoning resolution minimum lot size requirement of five acres. Appellant's arguments, which have, to a large extent, been addressed under the rubric of the first assignment, contend strenuously that appellee cannot demonstrate nonconforming use.

Appellant's first premise is that this action solely concerns the legal effect of lines drawn on a tax or plat map. Appellant appears to be claiming that these tax lines constitute a legal

fiction, as it argues that the same amount of acreage remains in the possession of the same persons, regardless of the existence of arbitrary boundary lines. However, as appellee's piquant response details, the individual delineation of the property lines (which may have had no real effect during the life of Paul Johnson) have a significant effect when the owner wishes to pass sections of his/her property by will, subdivide his/her property for sale and profit, or to grant portions of the property to relatives or friends as a gift. Given the presence of testimony which stated that the effect of the combination of the twelve lots into four would be a loss of $200,000, this court is not prepared to hold that the demarcation of the land into twelve lots is solely an abstraction on a tax map.

Appellant's second premise is more cognizable, in that it challenges the legal ability to refer to appellee's lots as nonconforming. This theory, which is discussed by Chief Justice Celebreeze in his concurrence in *Negin,* is further expressed in *State, ex rel. Bugden,* v. *Kiefaber* (1960), 113 Ohio App. 523, 18 O.O. 2d 169, 179 N.E. 2d 360, which states:

"Section 519.19 Revised Code, provides for the continuance of nonconforming uses. But this land, being undeveloped, does not come within the category of a nonconforming use, for it was not actually being *used* in the sense in which that term is generally accepted. It has been held that the mere laying out of vacant lots does not constitute such a use as to justify a variance." *Id.* at 530, 18 O.O. 2d at 173, 179 N.E. 2d at 365, citing *Smith* v. *Juillerat* (1954), 161 Ohio St. 424, 53 O.O. 340, 119 N.E. 2d 611. (Emphasis *sic.*)

Although this court agrees with the rationale expressed by *Kiefaber* and *Juillerat, supra,* we find that, in this case, the land in contention is more than just a "vacant lot." The unique topographical features of the properties, the geometrical form given to many of these lots in the plat, and the presence of streets and utilities tailored to the individual properties militate against the assumption that these lots were merely vacant and unused real estate. In this instance, this court finds that the trial court was correct in determining that these lots had a nonconforming use.

This court further finds, as previously indicated, that appellant's reliance on *Clark* is unavailing. Appellant urges that this court find *Clark* to stand for the proposition that *Negin* does not apply in instances where the lots in question were both substandard and contiguous. However, the actual holding of *Clark* is very narrow, resting on the factual predicate of the original landowner having subdivided his land improperly with notice of the zoning regulations. The implication of *Clark* is that, had the property owner subdivided his property prior to the enactment of the ordinance, *Negin* would apply and the zoning regulation would have been found to have been an unconstitutional undertaking.

Appellant's second assignment is without merit.

Therefore, for the reasons stated in this opinion, the judgment of the trial court is affirmed.

*Judgment affirmed.*

CHRISTLEY, P.J., and MAHONEY, J., concur.