DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Appellant, Dennis Cerny, appeals from the judgment of the Summit County Court of Common Pleas. This Court affirms.
 I. {¶ 2} Appellant is the owner of certain real property located within the Village of Boston Heights at 6367 Chittenden Road ("the property"). This action commenced October 8, 1997 when the Village of Boston Heights, Appellee, filed a complaint for injunction against Appellant to enjoin him from operating an excavating and trucking business from the property without first obtaining approval from Appellee to do so, as required by its zoning and building *Page 2 
ordinances. On February 8, 1999, the parties entered into a consent entry whereby Appellant agreed to cease operating the business on the property until he received approval from Appellee, remove a lean-to he had constructed on the property, and remove certain personal property from the property.
 {¶ 3} Appellant failed to comply with the February 8, 1999 order. During the next two years, the parties litigated Appellant's refusal to comply with the order and his continued operation of his business. Throughout this time, the trial court repeatedly ordered Appellant to cease operation of his business on the property and to remove from the property the personal property related to the business. In addition, the trial court repeatedly permitted Appellee to enter the property and remove Appellant's personal property. Notably, at a June 17, 1999 hearing before a magistrate, Appellant acknowledged that he was in willful violation of the trial court's previous order and thus in willful contempt of court. The magistrate gave Appellant an additional ten days to comply with the trial court's prior orders.
 {¶ 4} The trial court afforded Appellant additional opportunities to comply. The record reflects that an additional hearing was held before a magistrate on August 4, 1999. The hearing resulted in a decision dated August 30, 1999. In that decision, the magistrate found that as a result of Appellant's willful violation and contempt of court, he should be sanctioned. The trial court adopted the magistrate's decision in its May 30, 2001 judgment entry. In its May 30, 2001 *Page 3 
judgment entry, the trial court permanently enjoined Appellant from the operation of his business on the property and imposed monetary sanctions for his repeated refusal to comply with previous court orders.
 {¶ 5} Despite the trial court's May 30, 2001 order, Appellant did not comply with the injunction. On December 7, 2004, Appellee filed a motion to show cause citing Appellant's continued operation of his business, construction of certain structures and grading of the property in such way that it created a nuisance for Appellant's neighbors. Appellee alleged that such actions directly violated the May 30, 2001 order as well as Appellee's zoning and building ordinances.
 {¶ 6} The trial court scheduled a hearing on the motion to show cause for April 2005. However, the parties reached an agreement prior to the hearing which "allow[ed] [Appellant] to come into compliance with t[he] Court's Order of May 30, 2001 and the zoning and building codes of [Appellee]." This agreement was memorialized in a stipulated entry dated May 17, 2005. Pursuant to that entry, Appellant agreed that within 15 days of the order he would cease operating any business on the property. Further, he agreed that within 15 days of the order he would "remove all equipment, vehicles, materials, and trailers from the Property." Likewise, Appellant agreed not to "bring any new equipment, vehicles, materials, or trailers onto the Property[.]" Appellant also agreed that if he failed
 "to remove said equipment, vehicles, materials, and trailers from his Property within (15) days of the date of this Order, [Appellee] *Page 4 
may enter upon the Property and remove any equipment, vehicles, materials, or trailers on the Property. * * * Should [Appellee] enter upon the Property to remove any equipment, vehicles, materials, or trailers pursuant to this paragraph, [Appellant] shall be liable to [Appellee] for the cost to remove, move, store, and sell the same."
Appellant further agreed that "[Appellee] may sell any equipment, vehicles, materials, or trailers removed pursuant to this Order. [Appellee] may use the proceeds from said sale to satisfy its costs incurred in removing, moving, storing, and selling said vehicles."
 {¶ 7} Appellant also agreed that he would not "grade, regrade, or alter his property in any way until such time as he is permitted by [Appellee] pursuant to this Order." The May 17, 2005 entry provided that Appellant could move certain vehicles and equipment onto the property, conduct business on the property and build structures on the property, once he obtained certain permits and site plan approval from Appellee.
 {¶ 8} On October 4, 2005, the trial court permitted Anthony Umina, the owner of property adjacent to Appellant's, to intervene in the action. On March 7, 2006, Umina filed a complaint against Appellant. Umina subsequently filed an amended complaint on May 18, 2006, alleging that Appellant entered upon and damaged his real property while altering the ditch that ran along their mutual property line. Umina also alleged claims against Appellant for breach of contract, libel, slander and tortuous interference with a business relationship. *Page 5 
 {¶ 9} Appellant failed to follow the May 17, 2005 stipulated entry. As a result, on February 27, 2006, Appellee again filed a motion to show cause. The trial court held hearings on Appellee's motion on June 12 and June 20, 2006. The record reflects that Appellant's counsel received notice of the June hearings on April 24, 2006. Appellant appeared with counsel at both hearings. Appellee presented evidence that Appellant had failed to abide by the terms of the May 17, 2005 stipulated entry and the May 30, 2001 order by continuing to operate his unlawful business without first obtaining all the necessary approvals from Appellee. Appellee acknowledged that Appellant had made some effort to comply with the order and stipulated entry by (1) applying for and obtaining a zoning certificate from Appellee's zoning inspector approving the use of the property for a trucking and excavating business and (2) applying for preliminary site plan approval from Appellee. However, the record reflects that Appellant failed to follow the necessary procedures to obtain final site plan approval.
 {¶ 10} Appellee presented evidence at the hearing that, despite his failure to obtain the necessary final approval, Appellant recommenced business operations on the property. At the hearing, Appellant's counsel stipulated that Appellant returned the vehicles, equipment, trailers and machinery to the property. Appellant's counsel also stipulated that Appellant was currently running his dump trucks on and off the property and storing excavating materials on the property. Further, Appellee introduced evidence that Appellant had brought a trailer onto the *Page 6 
property and had illegally connected electricity to the trailer. Both the zoning inspector and the Chief of Police of Boston Heights testified that, based on their observations, Appellant had resumed his unlawful business operations.
 {¶ 11} Appellee also introduced evidence that Appellant continued to grade and alter his land in contravention of the May 17, 2005 stipulated entry in which he agreed to refrain from such activity. Appellee set forth evidence that Appellant's actions in continuing to dig and alter the land was destabilizing and eroding a ditch, which adversely affected Umina's property.
 {¶ 12} Although the trial court permitted Umina to intervene, the trial court did not consider Umina's causes of action at the June 2006 hearings. Umina's counsel attended the hearings but presented no evidence, testimony or argument at the hearing.
 {¶ 13} After hearing testimony and reviewing evidence from the June 12 and June 20, 2006 hearings, the trial court issued an order on July 19, 2006. The trial court found that Appellant failed to obtain the necessary permits to legally operate his business. The trial court determined that Appellant had recommenced operation of the business on the property, returned the heavy equipment and excavating materials to the property, and brought a trailer onto the property with an illegal utility connection. Accordingly, the trial court found that Appellant had willfully failed to comply with the May 30, 2001 order and the May 17, 2005 stipulated entry. As such, the trial court found Appellant in contempt. In its July *Page 7 
19, 2006 order, the trial court stated that, "in conformity with the order of May 30, 2005 as agreed by the parties, the Village of Boston Heights may forthwith * * * [take certain actions.]" (Emphasis added.) The trial court then ordered that Appellee was permitted to do the following:
 "enter upon the property at 6367 Chittenden Road and seize and remove all equipment, vehicles, materials or trailers on the property. Such seized property shall be sold by [Appellee] in a reasonable commercial manner. Proceeds of sale shall be applied to the costs of the Village incurred in the enforcement of this order.
 "* * *
 "enter upon the property at 6367 Chittenden Road and cause the property to be graded and ditched[.]
 "* * *
 "Upon completion of the compliance activities by [Appellee] and notice to the court and [Appellant], [Appellant] may enter upon the property but is permanently enjoined from conducting any business activities, from placing any equipment, vehicles, structures, materials or property of any kind on the property until there has been full compliance with the applicable zoning and building codes of [Appellee].
 "[Appellant] is further enjoined from grading, excavating in any manner or moving soil or materials of any kind on the property until there has been full compliance with the applicable zoning and building codes of [Appellee]."
 {¶ 14} The court further assessed a fine of $ 50.00 per day as and for contempt from May 17, 2005 until the trial court determined that Appellant had purged the contempt by complying with the order. Appellant timely filed a notice of appeal from the trial court's July 19, 2006 order and the trial court's October 4, *Page 8 
2005 order permitting Umina to intervene, raising two assignments of error for our review.
 II. ASSIGNMENT OF ERROR I "THE JULY 19 ORDER CONSTITUTES AN UNLAWFUL AND UNCONSTITUTIONAL CONFISCATION OF [APPELLANT'S] PROPERTY, WITHOUT JUST COMPENSATION OR DUE PROCESS OF LAW."
 {¶ 15} In Appellant's first assignment of error, he contends that the trial court's July 19, 2006 order constitutes an unlawful and unconstitutional confiscation of his property without just compensation or due process of law. We disagree.
 {¶ 16} At the outset, we note that Appellant has not challenged the trial court's determination that he was in contempt of the trial court's prior orders. Rather, he challenges the sanctions imposed against him and the application of Appellee's zoning ordinances and building regulations. He also challenges the trial court's jurisdiction to issue the July 19, 2006 order.
 {¶ 17} Appellant asserts that this Court should review the trial court's issuance of sanctions against him de novo. However, Appellant is incorrect as we are obligated to review the trial court's determination regarding sanctions under an abuse of discretion standard. Absent an abuse of discretion, we cannot reverse judicial sanctions imposed for civil contempt. Burchett v. Miller (1997), 123 Ohio App.3d 550, 552. An abuse of discretion connotes action by the trial court that is *Page 9 
unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219.
 {¶ 18} R.C. 2727.11 governs the enforcement of an injunction or restraining order and provides:
 "An injunction or restraining order granted by a judge may be enforced as the act of the court, and disobedience thereof may be punished by the court, or by a judge who granted it in vacation, as a contempt."
 {¶ 19} Contempt is the disobedience of a lawful court order.Windham Bank v. Tomaszczyk (1971), 27 Ohio St.2d 55, at paragraph one of the syllabus; R.C. 2705.02(A). Contempt may be classified as either civil or criminal in nature. Denovchek v. Bd. of Trumbull Cty.Commrs. (1988), 36 Ohio St.3d 14, 16. This distinction is based on the character and purpose of contempt sanctions imposed. Id. Sanctions designed to benefit the complainant by remedying the contempt or coercing compliance with a court order are civil in nature, characterized by conditional sentences that may be purged if the contemnor acts to remedy the contempt. Boggs v. Boggs (1997),118 Ohio App.3d 293, 299; Brown v. Executive 200, Inc. (1980), 64 Ohio St.2d 250,253-54.
 {¶ 20} Civil contempt is the failure to do something the court has ordered in a civil action for the benefit of the opposing party therein.Sancho v. Sancho (1996), 114 Ohio App.3d 636, 642. *Page 10 
 "The purpose of sanctions imposed for civil contempt is to coerce compliance with the underlying order or to compensate the complainant for loss sustained by the contemnor's disobedience. Punishment for civil contempt may, therefore, be either: (1) remedial or compensatory in the form of a fine to compensate the complainant for the contemnor's past disobedience; or (2) coercive and prospective, i.e., designed to aid the complainant by bringing the defendant into compliance with the order, and conditional, wherein confinement may be terminated by the contemnor's adherence to the court's order." Citicasters Co. v. Stop 26-Riverbend, Inc., 147 Ohio App.3d 531, 2002-Ohio-2286, at ¶ 51, citing Brown, 64 Ohio St.2d at 254.
 {¶ 21} Appellant first argues that "[t]he penalty for failing to abide by the permanent injunction is defined by [R.C.] 2727.11 as an order in contempt of court. The court had no jurisdiction to enter any remedy other than contempt." Appellant asserts that the trial court had no authority to issue sanctions but, instead, only had authority to find Appellant in contempt. Ironically, Appellant later acknowledges that "[t]he remedy prescribed for violation of a permanent injunction is sanctions, pursuant to [R.C.] 2727.11." With the latter statement, Appellant has undermined his argument that the trial court had no authority under R.C. 2727.11 to issue sanctions.
 {¶ 22} Clearly, a finding of contempt alone would have no impact on a party if the trial court were not permitted to prescribe a remedy for the contempt. A finding of contempt is the first part of the punishment; the trial court must also impose a sanction. See Chain Bike Corp. v.Spoke `N Wheel, Inc. (1979), 64 Ohio App.2d 62, at syllabus (holding that "[i]n order for there to be a final order in contempt of court proceedings, there must be both a finding of contempt and *Page 11 
imposition of a sanction or penalty * * *" and "[t]he mere adjudication of contempt of court is not a final order until a sanction or penalty is also imposed"). Moreover, "[t]he power of contempt is inherent in a court, such power being necessary to the exercise of judicial functions." Denovchek v. Bd. of Trumbull Cty. Commrs. (1988),36 Ohio St.3d 14, 15. Because the contempt power is inherent, it "exist[s] independently from express constitutional provision or legislative enactment." Cincinnati v. Cincinnati Dist. Council 51, Am. Fedn. ofState, Cty. and Mun. Emp., AFL-CIO (1973), 35 Ohio St.2d 197, 202. Consequently, Appellant's argument that R.C. 2727.11 provides no basis for the trial court's issuance of sanctions is of no consequence. The trial court had inherent authority independent of R.C. 2727.11.
 {¶ 23} Appellant's contention that he was unaware that the trial court could dispossess him from his real estate and confiscate his property is wholly unfounded. The May 17, 2005 consent agreement reflects that Appellant consented to all of the sanctions imposed by the court. Appellant specifically consented to Appellee's removal and sale of his equipment, vehicles, materials, and trailers from the property within 15 days of the order if he failed to remove those items himself. Furthermore, the record reflects that the trial court had warned Appellant on several prior occasions that Appellant must either remove his personal property or that Appellee could remove it at Appellant's expense. *Page 12 
Consequently, Appellant was more than adequately apprised that the removal of his property was a potential sanction.
 {¶ 24} Appellant also had substantial notice that the trial court could issue a sanction concerning the regrading of his property to prevent erosion, stabilize the banks and control stormwater runoff. In the May 17, 2005 consent order, Appellant agreed to stop grading and excavating the property. In addition, in the conditions to his preliminary site plan approval, he agreed to survey the property and refrain from all grading until he obtained approval on the drainage calculations. Appellant also agreed that he would regrade the ditch along the northern property line to prevent further erosion and regrade his property in a manner that would control stormwater runoff. Accordingly, Appellant had notice that if he continued to grade and excavate the property and damage the property to the north, the trial court could remedy the situation.
 {¶ 25} We also find that Appellant had notice that the court could permit Appellee to temporarily fence off portions of the property or take other measures to keep Appellant off the property while it removed the equipment, etc., and graded the property. Over the past ten years, Appellant has repeatedly and willfully violated the trial court's orders. Appellant has not contested the trial court's finding that he violated its orders. Given Appellant's repeated and willful violations, this sanction was the only option the court had to ensure that Appellant would not continue his business operations and therein interfere with Appellee's *Page 13 
ability to implement the sanctions. As such, we find that the trial court acted well within its sanctioning authority when it permitted Appellee to prohibit Appellant from entering the property.
 {¶ 26} Appellant similarly had ample notice that the trial court could prohibit him from operating his construction business on the property until he fully complied with the applicable zoning and building ordinances. The trial court had repeatedly ordered Appellant to cease operating any business on the property until he obtained the proper authority. Moreover, the stipulated entry reflects that Appellant expressly agreed that he would not operate his business on the property until he obtained the appropriate permits and complied with the other requirements:
 "[Appellant] may conduct business on the Property only in accordance with the approved business use and approved site plan. [Appellant] shall not conduct any business use or scope outside of the zoning certificate and site plan approved pursuant to this Order. [Appellant] shall not conduct any business use on the property until after he has obtained the Occupancy Permit and completed all other preceding steps required by this Order."
Unlawful Taking of Property {¶ 27} Appellant's contention that the July 19, 2006 order constitutes an unlawful taking of property without fair compensation in violation of his civil rights under the Fifth and Fourteenth Amendments to the U.S. and Ohio Constitutions and deprives Appellant of his right to due process is twofold. Appellant first argues that Appellee's enforcement of its zoning ordinances and *Page 14 
building regulations was arbitrary. He contends that Appellee unreasonably applied the zoning ordinances and building regulations to him and therein deprived him of all economic uses of his property. Secondly, Appellant argues that the sanctions, specifically the regrading of his property and the seizure of his personal property, unconstitutionally deprive him of his property.
 {¶ 28} The Fifth and Fourteenth Amendments to the United States Constitution guarantee that private property shall not "be taken for public use, without just compensation." "In order to establish a taking, a landowner must demonstrate a substantial or unreasonable interference with a property right." State ex rel. OTR v. Columbus (1996),76 Ohio St.3d 203, 206. An interference includes not only the actual physical taking of real property but also the deprivation of an intangible interest in the premises. Id., citing Smith v. Erie RR. Co. (1938),134 Ohio St. 135, paragraph one of the syllabus. As the value of property lies in the owner's absolute right of dominion, use, and disposition for every lawful purpose, any physical interference with the owner's use and enjoyment of his property is a taking to that extent. State ex rel.OTR, 76 Ohio St.3d at 207, quoting Mansfield v. Balliett (1902),65 Ohio St. 451, 471.
Zoning Ordinances and Building Regulations {¶ 29} "`Zoning regulations that effectively make a landowner's property valueless without any corresponding public benefits can constitute unconstitutional takings'", crossing the line between regulation and confiscation. *Page 15 Schreiner v. Russell Twp. Bd. of Trustees (1990), 60 Ohio App.3d 152,155, quoting Clark v. Woodmere (1985), 28 Ohio App.3d 66, 68. However, the fact that the property has been rendered less valuable by zoning, taken alone, is insufficient. Ketchel v. Bainbridge Twp. (1990),52 Ohio St.3d 239, 243. "[I]t must be shown that the `permitted uses are not economically feasible, or the regulation only permits uses which are highly improbable or practically impossible under the circumstances.'" Id. at 243-244, quoting Valley Auto Lease of Chagrin Falls v. AuburnTwp. Bd. of Zoning Appeals (1988), 38 Ohio St.3d 184, 186.
 {¶ 30} The party challenging the constitutionality of a zoning ordinance may argue (1) that the ordinance is unconstitutional as applied to the property in question, and (2) that application of the ordinance to the property so interferes with its use as to constitute a taking. Goldberg Cos., Inc. v. Richmond Hts. City Council (1998),81 Ohio St.3d 207, 210. "[I]n cases where the landowner alleges that the ordinance so interferes with the use of the property that it, in effect, constitutes a taking of the property, the landowner may prevail by proving that the ordinance has denied the landowner the economically viable use of his or her land." Id. In either case, the party challenging the ordinance must overcome the presumption of constitutionality "beyond fair debate." Id. at 209. In the first instance, the complaining party must demonstrate that application of the ordinance is "clearly arbitrary and unreasonable and without substantial relation to the public health, safety, morals, or general welfare of the community." (Citation omitted.) *Page 16 
Id. at syllabus; Wyoga Realty Co., et al. v. Akron (Apr. 22, 1981), 9th Dist. No. 9445, at *4.
 {¶ 31} Appellant argues that Appellee will effectively "take" his property by restriction, through the use of its zoning ordinances and building regulations, because he will be deprived of all economically viable use of his property. We disagree.
 {¶ 32} Appellant presented no evidence at the June 2006 hearings that Appellee's application of its zoning ordinances is arbitrary or unreasonable and lacks a substantial relationship to the public health, safety, morals or general welfare of the community. Appellee's zoning inspector and engineer testified that Appellant was afforded the same treatment as other applicants. Furthermore, Appellant's application to operate a trucking and excavating business was approved by the zoning inspector. The evidence presented at the hearing reflects that the Boston Heights' Planning Commission conditionally approved Appellant's preliminary site plan. Consequently, the evidence demonstrates that Appellee applied its zoning ordinances in a consistent, reasonable manner.
 {¶ 33} The record establishes that Appellant failed to follow the procedure required to obtain final approval of his site plan. Appellant failed to return to the Boston Heights' Planning Commission for final site plan review. In addition, Appellant failed to obtain an occupancy permit from Appellee. Appellant has not demonstrated that, had he followed the appropriate procedures, Appellee would *Page 17 
have nonetheless prohibited him from operating his business from his property. The record before us suggests that the contrary is true.
 {¶ 34} Appellant has failed to set forth any evidence that Appellee's application of its zoning code deprived him of the economically viable use of his property. Goldberg Cos., Inc., 81 Ohio St.3d at 210. Appellant has not established that he is prevented from making any economic use of his property. In fact, the evidence at trial demonstrated that Appellant was given conditional site plan approval. Appellee presented testimony that had Appellant followed Appellee's zoning code, he would have been permitted to operate his business on the property.
Sanctions {¶ 35} Appellant has similarly failed to demonstrate that the sanctions themselves, specifically Appellee's act of removing his personal property, barring him from the use of his land until he obtained the necessary approvals, and grading his land to correct the erosion and stormwater issues, constituted an unconstitutional taking of his property. The record reflects that Appellant repeatedly failed to conduct his construction business in accordance with Appellee's applicable zoning restrictions and building codes. In an effort to ensure Appellant's compliance with the trial court's order, the parties reached an agreement whereby Appellant agreed that if he failed to remove his equipment, vehicles, materials, and trailers from his property within 15 days of the order, *Page 18 
Appellee could remove and sell these items. Moreover, Appellant agreed that he would not conduct any business on the property until he obtained the necessary approvals.
 {¶ 36} A court is permitted to fashion sanctions "to benefit the complainant by remedying the contempt or coercing compliance with a court order[.]" Noll v. Noll, 9th Dist. No. 03CA008216, 2003-Ohio-5358, at ¶ 12. Such a sanction may involve a conditional sentence that "may be purged if the contemnor chooses to remedy the contempt." Id. These conditions were specifically designed to ensure Appellant's compliance with the court's May 30, 2001 order.
 {¶ 37} Moreover, as evidenced by the May 17, 2005 stipulated entry, Appellant agreed to the removal of his personal property and agreedto cease his operation of the unlawful business as sanctions. As such, Appellant has already had the opportunity to contest the constitutionality of these sanctions. Appellant has forfeited the right to question the validity of these sanctions on appeal. TradesmenInternatl, Inc. v. Kahoe (Mar. 16, 2000), 8th Dist. No. 74420, at *7, citing Assn. of Community Orgs. For Reform Now v. Edgar (C.A. 7, 1996),99 F.3d 261, 262.
 {¶ 38} As to the sanction permitting Appellee to survey Appellant's property and regrade and stabilize the property, Appellant contends that permitting such activity would turn his property into an unusable swamp. Appellant asserts that, as a result, he will lose his grading certificate from the Army Corps of *Page 19 
Engineers, his ability to install septic and consequently, his ability to use his property for his business. The record does not support this conclusion. A review of the record reflects no evidence or testimony demonstrating that if Appellee grades Appellant's property the property will regress to an unusable swamp condition. Moreover, Appellant has failed to demonstrate that the regrading ordered by the trial court would violate and therefore invalidate either the Army Corps of Engineers approval to fill in the wetland or the Ohio Environmental Protection Agency's approval of the proposed septic system.
 {¶ 39} In addition, the record reflects that Appellant was afforded adequate due process prior to the issuance of the sanctions. Appellant has been afforded several hearings over the course of ten years of litigation over the property. Appellant was afforded proper notice of the June 2006 hearing. The record reflects that he was given several months to prepare for the hearings. At the hearings, Appellant was represented by counsel and presented evidence and witnesses. In light of the multitude of prior court orders addressing the exact same violations involved in this matter, the adequate notice of the hearing, Appellant's representation by counsel and ability to present evidence and witnesses on his behalf, we find that he was afforded adequate due process prior to the issuance of the sanctions.
 {¶ 40} Appellant additionally asserts that the trial court erred in revising its May 30, 2001 order. Appellant urges that the trial court was not permitted to *Page 20 
reconsider its May 30, 2001 order because that order was a final judgment. However, "[t]rial courts have inherent authority to enforce their orders and to punish for contempt." Seindel v. Steinberg (June 24, 1982), 8th Dist. No. 44125, at *4. This appeal stems from the trial court's finding that Appellant is in contempt of its May 30, 2001 order and subsequent issuance of sanctions. That order arose from Appellee's motion to show cause which concerned the trial court's May 30, 2001 and May 17, 2005 orders. These orders, in turn, related back to the trial court's orders dating back to 1999, 2000 and 2001.
 {¶ 41} Appellant additionally argues that the state court's jurisdiction to issue the regrading sanction was pre-empted by the jurisdiction of the Army Corps of Engineers to issue fill permits for wetlands. We are mindful that an appellant's assignment of error provides a roadmap for the court and directs this Court's analysis of the trial court's judgment. See App.R. 16. Appellant's assignment of error directs this Court to consider whether the trial court's July 19, 2006 order constitutes an unlawful and unconstitutional confiscation of Appellant's property without just compensation or due process of law. However, Appellant's law and argument section also challenges the trial court's jurisdiction. We decline to review Appellant's challenge to the trial court's jurisdiction as it is not contained in a separate assignment of error as required by Loc.R. 7(B)(7) and App.R. 16(A)(7).
 {¶ 42} Appellant's first assignment of error is overruled. *Page 21 
 ASSIGNMENT OF ERROR II "THE COURT BELOW COMMITTED REVERSIBLE ERROR BY PROCEEDING WHEN IT HAD NO JURISDICTION ON CLAIMS MADE BY THOSE WHO INTERVENE AFTER FINAL JUDGMENT."
 {¶ 43} In Appellant's second assignment of error, he contends that the trial court erred in proceeding on claims made by Umina, the third-party plaintiff, when it had no jurisdiction because Umina intervened after final judgment.
 {¶ 44} Appellant's second assignment of error is intertwined with his argument that the trial court lacked jurisdiction to issue any order after its May 30, 2001 order granting a permanent injunction. Appellant contends that because the trial court lacked jurisdiction to issue any orders after May 30, 2001, the trial court's October 4, 2005 order granting Umina's motion to intervene was a nullity.
 {¶ 45} On appeal, Appellant has not challenged the trial court'sdecision permitting Umina to intervene. Rather, Appellant only challenges the trial court's jurisdiction to grant Umina's motion. We have already determined that the trial court possessed jurisdiction to enforce its orders and punish for contempt. Seindel, supra, at *4. InNorton v. Sanders (1989), 62 Ohio App.3d 39, this Court articulated the requirements a non-party must meet in order to intervene after final judgment has been entered. Although intervention after judgment is rare, it may be granted under certain circumstances. State Farm Mutual Ins.Cos. v. Young, 9th Dist. No. 22944, 2006-Ohio-3812, at ¶ 16, citingNorton, *Page 22 62 Ohio App.3d at 42. The most significant inquiry is "`whether in view of all the circumstances the intervenor acted promptly after the entry of final judgment.'" Norton, 2 Ohio App.3d at 42, quoting United Airlines, Inc.v. McDonald (1977), 432 U.S. 385, 395-96. Historically, courts have considered the following factors:
 "the purpose for which intervention was sought; the necessity for intervention as a means of preserving the applicant's rights; and the probability of prejudice to those parties already in the case." Id., citing Annotation, Timeliness of Application for Intervention As of Right Under Rule 24(a) of Federal Rules of Civil Procedure (1982), 57 A.L.R.Fed. 150, 205.
 {¶ 46} As the trial court had the authority to permit Umina to intervene so long as Umina met the requirements for intervention, we find no merit in Appellant's contention that the trial court lackedjurisdiction to grant Umina's motion to intervene on October 4, 2005 merely because the trial court had entered a final order prior to the filing of the motion to intervene. Accordingly, Appellant's second assignment of error is overruled.
 III. {¶ 47} Appellant's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.
Judgment affirmed. *Page 23 
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
SLABY, P. J.
WHITMORE, J.
 CONCUR *Page 1