OPINION
{¶ 1} Appellant, Carrolls Corporation, d.b.a. Burger King Restaurant, appeals the decision of the Lake County Court of Common Pleas, affirming the grant of a conditional use permit to construct a drive-thru facility to appellee, Steak `n Shake, by appellees, the City of Willoughby and its Planning Commission and City Council. For the following reasons, we affirm the decision of the court below.
 {¶ 2} Steak `n Shake is interested in purchasing property located at 5051 SOM Center Road, Willoughby, Ohio, for the purpose of building a restaurant. The property sits within Willoughby's General Business zoning district, which may be used for a restaurant as a "principal use permitted by right." Willoughby Codified Ordinances 1141.03(c)(5). The site is currently vacant but was previously occupied by a BP ProCare auto service station. The lot has about 150 feet of frontage on SOM Center Road and is about 300 feet deep. Immediately to the north of the property, at 5021 SOM Center Road, is a Burger King restaurant. To the south of the property is Kaiser Court, and to the east and the north-east are Northmark Office Building and its parking lot. Nearby, at 34600 Euclid Avenue, is a Dairy Queen restaurant.
 {¶ 3} The site plan for the restaurant submitted by Steak `n Shake to the City of Willoughby included plans for a drive-thru on the north side of the restaurant, abutting the Burger King parking lot. The proposed drive-thru includes a 10-foot wide drive-thru traffic lane that would extend about 160 feet along the east and north sides of the restaurant. Pursuant to Willoughby Codified Ordinance 1141.03(c)(16), a "drive thru facility" in association with a permitted use is a "conditional use," requiring Steak `n Shake to obtain a permit to construct the drive-thru.
 {¶ 4} On May 25, 2004, Steak `n Shake submitted an Application for Conditional Use Permit to the Willoughby Planning Commission along with a site plan and list of adjoining property owners.
 {¶ 5} On June 9, 2004, Steak `n Shake was granted an area variance reducing the number of off-street parking spaces it was required to provide from 83 to 61 parking spaces.
 {¶ 6} On June 10, 2004, the Planning Commission held a public hearing on Steak `n Shake's application. Joe Scott, representing Steak `n Shake, spoke in favor of granting the permit. Scott described the type of building Steak `n Shake proposed to build. Scott stated that he had been asked by Willoughby Police Chief, Conrad A. Straube, to limit traffic exiting onto SOM Center Road to right turn only, and that the site plan would be changed accordingly. Attorney Ben Ochner spoke on behalf of Burger King against granting the permit. Ochner represented Burger King's concerns as being "parking adequacy and traffic." Ochner argued that Steak `n Shake would be better able to meet the off-street parking requirements without a drive-thru facility. Following the public hearing, the Planning Commission held its regular meeting. This meeting was attended by Scott and Ochner. Scott further stated before the Commission that the drive-thru would operate twenty-four hours a day and seven days a week, Christmas and New Years Day excepted. Scott also informed the Commission that there would be an outside speaker in the drive-thru's menu board located in a landscaped island. No action was taken on Steak `n Shake's application for a conditional use permit at this time since the site plan had not yet been approved by the Willoughby Ingress Egress Board and was in need of revision.
 {¶ 7} Also, on June 10, 2004, the Planning Commission discussed Steak `n Shake's proposed site plan. Scott informed the Commission that Steak `n Shake intended to build the company's "standard building model" of 4,110 square feet. Scott agreed to reduce the wattage of the proposed light poles from 1,000 to 400 watts. The Commission tabled the vote on Steak `n Shake's site plan pending approval by the Ingress Egress Board.
 {¶ 8} At its regular meeting on June 24, 2004, the Planning Commission resumed consideration of Steak `n Shake's application for a conditional use permit and site plan. Scott and Ochner were present again to argue whether to grant the permit. Scott stated that the five lanes of SOM Center Road would be modified to allow a full left turn lane onto the property of the proposed restaurant and that Steak `n Shake would be responsible for striping the turn lane. Scott stated there would be a berm and a change of grade on the north side of the property, making it impossible to drive from the property into the Burger King parking lot. Scott also presented an aerial picture of the proposed site. Ochner submitted into the record the minutes of the Zoning Board's June 9, 2004 hearing on Steak `n Shake's parking variance. The Commission voted and approved Steak `n Shake's conditional use permit and modified site plan.
 {¶ 9} Burger King appealed the Planning Commission's decision to the court of common pleas, pursuant to R.C. 2506.04. Subsequent to the filing of the administrative appeal, the Planning Commission filed in the trial court Findings and Conclusions of Fact. The Commission found that Steak `n Shake intends to build a sit down, table service restaurant within Willoughby's General Business zoning district; such a restaurant is a "permitted use" under the zoning code; a variance has been allowed with respect to the property reducing the number of required off-street parking spaces from 83 to 61 spaces; the proposed drive-thru facility is located on "a major street (Route 91)" and is "located in an area least disruptive to pedestrian and vehicular traffic"; the proposed access drive is at least 100 feet from an intersection; and Steak `n Shake "has complied with all other applicable Ordinances of the City of Willoughby." On June 23, 2005, the court of common pleas affirmed the planning commission's decision to issue the conditional use permit.
 {¶ 10} Burger King timely appeals and raises the following assignments of error.
 {¶ 11} "[1.] The trial court erred by affirming the commission's decision despite the commission's indisputable failure to make specific findings and to find adequate evidence in support thereof as explicitly mandated by the code.
 {¶ 12} "[2.] The trial court erred by holding that Burger King waived its right to argue that the commission could not find that Steak `n Shake's application complied with applicable zoning regulations.
 {¶ 13} "[3.] The trial court erred by holding the property was a `valid non-conforming lot.'
 {¶ 14} "[4.] The trial court erred by affirming the commission's decision as supported by `substantial, reliable and probative evidence.'
 {¶ 15} "[5.] The trial court erred by affirming the commission's decision because that decision was unsupported by a preponderance of substantial, reliable and probative evidence."
 {¶ 16} A decision to grant a conditional use permit, made by a municipal planning commission, is reviewable by a court of common pleas as the "decision of any * * * commission * * * of any political subdivision." R.C. 2506.01. In its role as a reviewing court, the trial court must consider "the whole record," including new or additional evidence, to determine whether the commission's "decision is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence." R.C. 2506.04; Henley v. Youngstown Bd. of Zoning Appeals,90 Ohio St.3d 142, 147, 2000-Ohio-493.
 {¶ 17} "An appeal to the court of appeals, pursuant to R.C.2506.04, is more limited in scope and requires that court to affirm the common pleas court, unless the court of appeals finds, as a matter of law, that the decision of the common pleas court is not supported by a preponderance of reliable, probative and substantial evidence." Kisil v. Sandusky (1984),12 Ohio St.3d 30, 34. "While the court of common pleas has the power to weigh the evidence, an appellate court is limited to reviewing the judgment of the common pleas court strictly on questions of law."Akwen, Ltd. v. Ravenna Zoning Bd. of Appeals, 11th Dist. No. 2001-P-0029, 2002-Ohio-1475, at ¶ 17 (citation omitted).
 {¶ 18} "The inclusion of conditional use provisions in zoning legislation is based upon a legislative recognition that although certain uses are not necessarily inconsistent with the zoning objectives of a district, their nature is such that their compatibility in any particular area depends upon surrounding circumstances. Thus, the legislative body provides for their inclusion in a district only upon administrative approval granted in accordance with legislatively prescribed standards and conditions." Gerzeny v. Richfield Twp. (1980),62 Ohio St.2d 339, 341 (footnotes omitted). In reviewing the decision to allow a conditional use, "a court is bound by the nature of administrative proceedings to presume that the decision of the administrative agency is reasonable and valid." CommunityConcerned Citizens, Inc. v. Union Twp. Bd. of Zoning Appeals,66 Ohio St.3d 452, 456, 1993-Ohio-115, citing C. Miller Chevrolet,Inc. v. Willoughby Hills (1974), 38 Ohio St.2d 298, 302.
 {¶ 19} According to the Willoughby zoning code, the Planning Commission shall review the application for conditional use "to determine whether or not the proposed use is appropriate and keeping with the purpose and intent of this Planning and Zoning Code. In making such a determination, the Planning Commission shall find that both the general criteria established for all conditional uses and the specific requirements established for that particular use, as set forth in Chapter 1155 of this Code, shall be satisfied by the establishment and operation of the proposed use. In addition, the Planning Commission shall review the development plan for the proposed conditional use according to the development plan review procedures set forth in Section 1109.04(g)." Willoughby Codified Ordinances 1109.05(e).
 {¶ 20} The "general criteria for all conditional uses" are contained in Willoughby Codified Ordinance 1155.02. This section provides that "the Planning Commission shall review the particular facts and circumstances of each proposed use in terms of the following standards and shall find adequate evidence that: (a) The conditional use in the proposed location will be harmonious and in accordance with the purpose, intent and basic planning objectives of this code and with the objectives for the district in which located and with the Comprehensive Plan; (b) The establishment, maintenance or operation of the conditional use will not be detrimental to or endanger the public health, safety or general welfare; (c) The conditional use will be designed, constructed, operated and maintained so as to be harmonious and appropriate in appearance with the existing or intended character of the general vicinity, and that such use will not essentially change the character of the same area; (d) The hours of operation of the proposed use are similar to a use permitted in the district. (e) The conditional use will not be hazardous or disturbing to the existing and future use and enjoyment of property in the immediate vicinity for the uses permitted, nor substantially diminish or impair property values within the neighborhood; (f) The establishment of the conditional use in the proposed location will not impede the normal and orderly development and improvement of the surrounding property for uses permitted in the district; (g) Adequate utilities, access roads, drainage and/or necessary facilities have been or are being provided; (h) Adequate measures have been or will be taken to provide ingress and egress designed to minimize traffic congestion on the surrounding public streets; (i) The establishment of the conditional use should not be detrimental to the economic welfare of the community by creating excessive additional requirements at public cost for public facilities such as police, fire and schools; (j) There is minimal potential for future hardship on the conditional use that could result from the proposed use being surrounded by uses permitted by right that may be incompatible; (k) The design and arrangement of circulation aisles, parking areas, and access drives shall be in compliance with the regulations set forth in Chapter 1161 and shall provide for interconnecting circulation among adjacent parcels. (l) If the conditional use is proposed in a residential district, the proposed use would generate only a minimum of traffic through a residential neighborhood if located on a local street."
 {¶ 21} The "specific requirements established for that particular use," relative to drive-thru facilities, are contained in Willoughby Codified Ordinance 1155.07(m). This section provides that: "(1) Such facilities shall be located on a major street in an area least disruptive to pedestrian and vehicular traffic. (2) Loud speaker systems shall be approved as part of the site plan and shall not create a nuisance for adjacent properties. (3) Access drives shall be 100 feet from an intersection; one access drive per street frontage shall be permitted; and interconnecting circulation aisles between parcels shall be provided when practicable. (4) The Planning Commission may impose restrictions on the hours of operation."
 {¶ 22} Finally, the "review procedures" contained in Willoughby Codified Ordinance 1109.04(g) provides that the Planning Commission shall review the application for development submitted by Steak `n Shake "to determine that such application complies with the zoning requirements of the district in which the proposed development is located."
 {¶ 23} In its first assignment of error, Burger King argues that the trial court erred in affirming the decision to issue a conditional use permit where the Planning Commission failed to make express findings of fact as required by Willoughby Codified Ordinances 1109.05 and 1155.02. Burger King interprets the language contained in these sections that the Commission "shall find" the criteria satisfied and that the Commission "shall find adequate evidence" of the criteria to require the Commission to make express findings to each of these criteria. The trial court held the Planning Commission was only required "to consider" the criteria, noting the zoning code does not mandate the Planning Commission to publish any findings of fact in support of its decisions.
 {¶ 24} We hold the trial court's interpretation of Willoughby's zoning code to be essentially correct. The code does require the Planning Commission to do more than just "consider" the criteria; the Commission must find that the requirements are satisfied and supported by adequate evidence. However, this requirement is merely a prerequisite to approving the application for conditional use. The Commission is not required to set forth in a written opinion that it has found each of the criteria satisfied or to set forth the evidentiary basis on which it has found the criteria satisfied.
 {¶ 25} This conclusion is supported by the cases Burger King cites in support of its position. In Seaman v. Richland Twp. Bd.of Zoning Appeals, 3rd Dist. No. 8-2000-17, 2001-Ohio-2143, 2001 Ohio App. LEXIS 401, the court of appeals reversed the decision to grant a variance relative to a non-conforming structure on the grounds that neither the zoning board nor the trial court made specific findings of fact as required by the zoning code. Id. at *8-*9. Similarly, in Howard v. Dayton (Oct. 18, 1991), 2nd Dist. No. 12618, 1991 Ohio App. LEXIS 5116, the court of appeals affirmed the trial court's decision to overturn the granting of a conditional use permit on the grounds that the zoning board did not make specific findings required by the zoning code. Id. at *1, *5. The language of the zoning codes at issue in Seaman andHoward, however, differs markedly from the language of the Willoughby code. In Seaman, the code provided that "a variance shall not be granted unless the Board makes specific findings offact based directly on particular evidence presented to it,
which support conclusions that the standards and conditions * * * have been met by the applicant." 2001 Ohio App. LEXIS 401, at *8 (emphasis added). In Howard, the code provided that the "Board shall not grant a conditional use permit unless it shall, ineach specific case, make specific findings of fact directly basedupon the particular evidence presented to it, that support conclusions that * * * [t]he proposed conditional use will comply with all applicable regulations." 1991 Ohio App. LEXIS 5116, at *1-*2 (emphasis added). In contrast, the Willoughby code does not impose any requirement of "specific findings" based on "particular evidence." Cf. Hickory Street Coalition v. Akron,
9th Dist. No. 21738, 2004-Ohio-2246, at ¶ 26 (upholding the decision to grant a conditional use permit where the Planning Commission was required to find "adequate evidence" of the necessary criteria — "the Council does not have to state every subsection of [the zoning code identifying the criteria] on the record to demonstrate that it has properly considered them in its determination that the proposed plan meets their requirements for an acceptable conditional use").
 {¶ 26} In an analogous situation, a board of county commissioners must make certain findings before granting a petition for annexation. R.C. 709.033 ("the board of county commissioners shall enter an order * * * allowing the annexation if it finds that * * *"). The requirement that the board make certain findings before granting a petition does not, without more, impose the duty to make "written affirmative findings."Symmes Twp. Bd. of Trustees v. Dee (May 22, 1991), 1st Dist. No. C-900275, 1991 Ohio App. LEXIS 2377, at *5. In such cases, we must presume from the agency's approval of the application that the necessary criteria were found to be satisfied. Id. at *5-*6.
 {¶ 27} We also find Burger King's reliance on this court's decision in Strike the Gold v. Bd. of Zoning Appeals, 11th Dist. No. 2002-L-119, 2003-Ohio-5694, to be unavailing. InStrike the Gold, this court reversed the affirmance of the Willoughby Zoning Board's decision to revoke a certificate of occupancy on the grounds that the zoning board failed "to file conclusions of fact." Id. at ¶ 21. In the present case, the Planning Commission in has filed conclusions of fact, in accordance with Loc.R. III(E)(1)(a) of the Local Rules of the Court of Common Pleas for Lake County.[1] Secondly, the opinion in Strike the Gold did not cite to the Willoughby zoning code or otherwise explain the requirements of the Zoning Board in order to revoke a certificate of occupancy. For these reasons, Strike the Gold is not determinative of this issue.
 {¶ 28} Burger King's first assignment of error is without merit.
 {¶ 29} Burger King's second and third assignments of error are interrelated. As noted above, one of the criteria the Planning Commission was required to find to grant the conditional use permit was that Steak `n Shake's proposed development complied with the zoning requirements "of the district in which the proposed development is located," i.e. the requirements for the General Business zoning district. Willoughby Codified Ordinances 1109.04(g)(1). Lots within the General Business district are required to have a minimum lot width of 200 feet. Willoughby Codified Ordinances 1141.04. The site for Steak `n Shake's proposed restaurant has a width of approximately 150 feet.
 {¶ 30} The trial court held that Burger King waived its right to raise this issue on appeal because it did not raise the lot width issue before the Planning Commission. Nonetheless, the trial court considered the merits of Burger King's argument and concluded that the subject property is "a valid non-conforming lot" since it existed prior to the enactment of Willoughby Codified Ordinance 1141.04 in 1997.
 {¶ 31} Under the second assignment of error, Burger King argues the trial court erred by holding that the right to challenge the lot's conformity with the zoning code was waived. Appellees rely upon the case of In re Annexation of Territory ofRiveredge Twp. (1988), 46 Ohio App.3d 29, for the proposition that the failure to object to an error made at an administrative hearing forfeits the right to challenge that error on appeal. Id. at 38 (citations omitted). This court has explained that "[g]enerally, the failure to object or otherwise bring an error to the trial court's attention constitutes a waiver of that error on appeal. This rule also applies in appeals to the common pleas court from an administrative hearing." Alberini v. Warren Twp.Bd. of Trustees (Nov. 17, 1989), 11th Dist. No. 4083, 1989 Ohio App. LEXIS 4291, at *5-*6 (internal citation omitted).
 {¶ 32} The situations where the courts of appeal have applied the waiver doctrine are those where the error occurs during the course of the proceeding before the administrative agency and/or where the party fails to raise an issue in the appeal to the trial court. Generally, such errors are evidentiary or procedural in nature. See, e.g., Stores Realty Co. v. Cleveland (1975),41 Ohio St.2d 41, at syllabus (failure to object to the omission of the oath to a witness); Riveredge Twp., 46 Ohio App.3d at 37
(failure to assert the right to cross-examine affiants); In reApplication of Keller, 12th Dist. No. CA2003-04-100,2003-Ohio-6549, at ¶ 10 (failure to object to the admission of unsworn testimony).
 {¶ 33} Burger King argues that the necessity of objecting to the width of the lot, which does not conform to current zoning regulations, is not a waivable argument. We disagree. Such an issue is evidentiary in nature, and Burger King did not testify before the Planning Commission that the width of the lot did not conform. In a similar case, this court held that an appellant had waived the argument that a proposed car wash was not a permitted use in a commercial district when it failed to raise the issue at the hearing before the zoning board. In re Appeal of DinardoConstr., Inc. (March 31, 1999), 11th Dist. No. 98-G-2138, 1999 Ohio App. LEXIS 1430, at *7.
 {¶ 34} Accordingly, the second assignment of error is without merit.
 {¶ 35} Under the third assignment of error, Burger King challenges the trial court's determination that the property in question is a "non-conforming lot entitled to protection under R.C. 713.15." The statute cited by the court of common pleas provides that "[t]he lawful [commercial] use of any dwelling, building, or structure and of any land or premises, as existing and lawful at the time of enacting a zoning ordinance or an amendment to the ordinance, may be continued, although such use does not conform with the provisions of such ordinance or amendment." The trial court noted that, "[w]hile the former use of the lot (automobile servicing) has been discontinued for more than a year, the dimensions of the lot have not been changed. Because [the lot is platted and recognized by the city and Lake County as a platted lot record and] the dimensions of this lot were legal at the time § 1141.04 was enacted, and the dimensions have not been altered since then, the lot is a legal, non-conforming lot protected under R.C. 713.15." We agree.
 {¶ 36} Burger King argues that the lot on which Steak `n Shake proposes to build does not satisfy the provisions for nonconforming uses contained in the Willoughby Codified Ordinances. See Sections 1167.06 and 1167.02. These sections, however, do not apply to the property at issue. Section 1167.06 applies to residential lots and dwellings. Section 1167.02 applies to structures. As the trial court correctly pointed out, it is not the building or the use that is nonconforming, but the size of the lot. Under R.C. 713.15, the commercial lot with 150 foot width qualifies as a legally nonconforming lot. Burger King may not rely on the provisions of the Willoughby Codified Ordinances to circumvent the provisions of the statute.
 {¶ 37} Moreover, as appellees argued in their brief, the Ohio Supreme Court has held that area restrictions, such as width requirements, imposed on prior conforming lots are invalid. SeeNegin v. Bd. of Building and Zoning Appeals (1982),69 Ohio St.2d 492. In the case at bar, the commercial lot is a platted lot of record, recognized as such by the City of Willoughby and Lake County. The 150 foot width of this commercial lot predated the amendment to the zoning code requiring a greater lot width. The continued use of this 150 foot width commercial lot constitutes a legal nonconforming use. Cf. Pengal v.Mentor-on-the-Lake, 11th Dist. No. 2004-L-158, 2005-Ohio-5118, at ¶ 26 (applying Negin where a pre-existing lot comprised 6,280 square feet and a subsequent municipal ordinance increased the minimum lot area to 8,400 square feet); Schreiner v. RussellTwp. Bd. of Trustees (1990), 60 Ohio App.3d 152, 155 ("zoning restrictions attempt[ing] to `totally restrict' the owners in the use of their property absent compliance with the zoning restrictions" are invalid).
 {¶ 38} Burger King's third assignment of error is without merit.
 {¶ 39} Under the fourth assignment of error, Burger King argues that the trial court applied the wrong standard of review when it affirmed the Planning Commission's decision. Burger King acknowledges that the trial court stated the correct standard of review at the beginning of its opinion, i.e., it may reverse the Planning Commission's decision if it finds the decision "is not supported by a preponderance of reliable, probative and substantial evidence." In the final paragraph, however, the trial court merely stated that it could not "conclude that the decision of the Planning Commission * * * was unsupported by substantial, reliable and probative evidence." Burger King relies on the Ninth District Court of Appeals decision in Glencairn Corp. v.Richfield Twp., 9th Dist. No. 22209, 2005-Ohio-1463.
 {¶ 40} In the absence of evidence to the contrary, a court of appeals will presume that the lower court has applied the correct legal standard. Niles v. Cadwallader, 11th Dist. No. 2003-T-0137, 2004-Ohio-6336, at ¶ 34; Reeder v. Hunt, 5th Dist. No. 2004AP0007, 2005-Ohio-4077, at ¶ 26. In the present case, there is no evidence that the trial court applied the incorrect standard apart from the omission of the word "preponderance" in the concluding paragraph. In the substantive portion of the opinion, where it analyzes the evidence before the Planning Commission, the trial court properly spoke of a "preponderance" of the evidence. In Glencairn, by contrast, the trial court consistently misrepresented the appropriate standard of review, variously stating that its power to review administrative decisions is "limited," a "reviewing court" will not substitute its judgment for that of the administrative agency when there is "some" evidence to support the decision, and the zoning board's decision was supported by "sufficient" evidence. 2005-Ohio-1463, at ¶¶ 13-14.
 {¶ 41} The fourth assignment of error is without merit.
 {¶ 42} In the fifth and final assignment of error, Burger King argues that the Planning Commission's decision was not supported by a preponderance of substantial, reliable and probative evidence. Burger King focuses on several necessary standards for granting the conditional use permit which Burger King claims were not satisfied by the evidence. Specifically, Burger King challenges the findings that the proposed drive-thru facility would not be detrimental to public health and safety; that the drive-thru facility, in terms of design and intended use, would be appropriate to the general character of the area; that the drive-thru facility would not diminish the use or enjoyment of adjoining properties; that there would be adequate access roads and drainage for the drive-thru; and that the design of circulation aisles, parking areas, and access drives shall be in compliance with the zoning code. Willoughby Codified Ordinances 1155.02(b), (c), (e), (g), and (k).
 {¶ 43} The trial court considered each of these standards in light of the evidence before the Planning Commission. The trial court noted Steak `n Shake's proposed use was completely consistent with the character of the surrounding development, which included other restaurants with drive-thrus such as Burger King, Dairy Queen, and Taco Bell. There are no residential properties near the proposed restaurant. Steak `n Shake's representative testified as to the design and appearance of the building, discussing lighting for the parking lot and the stone exterior of the building. Evidence showed the property had access to public utilities and drainage for storm water. The trial court found no evidence that the drive-thru would compromise public health or safety.
 {¶ 44} The trial court recognized Burger King's primary concern that Steak `n Shake's proposed development did not contain adequate parking. This concern, however, had been addressed by the zoning board when it was decided to grant Steak `n Shake a variance to reduce the number of off-street parking spaces. In that proceeding, it was determined the existence of a drive-thru facility would reduce the need for off-street parking. The trial court, in this case, cited to evidence that eliminating the drive-thru facility would not increase the number of available parking spaces given the narrowness of the lot. It was also recognized that there would be no access to Burger King's parking lot from the drive-thru.
 {¶ 45} There would be access to the proposed restaurant from SOM Center Road and Kaiser Court. The trial court discussed a report regarding access to and from the property prepared by Traff-Pro Consultants. This report recommended limiting egress from the property onto SOM Center Road to right turns only. Steak `n Shake agreed to this recommendation. Steak `n Shake also agreed to be responsible for striping SOM Center Road so that there would be a full lane available to southbound traffic turning left into the property.
 {¶ 46} Having reviewed the trial court's decision, we conclude, as a matter of law, that it was supported by a preponderance of reliable, probative, and substantial evidence. The trial court discussed the standards challenged by Burger King and cited appropriate evidence in the record supporting the Planning Commission's decision.
 {¶ 47} The fifth assignment of error is without merit.
 {¶ 48} For the foregoing reasons, the decision of the Lake County Court of Common Pleas, affirming the approval of Steak `n Shake a conditional use permit to construct a drive-thru facility, is affirmed.
Donald R. Ford, P.J., William M. O'Neill, J., concur.
[1] Loc.R. III(E)(1)(a) provides that, in appeals from administrative agencies, "the administrative agency shall file findings of fact and conclusions of law in support of their decision."