DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a judgment of the Lucas County Court of Common Pleas which affirmed a decision of appellee the Village of Ottawa Hills Zoning Commission and thereby determined that plaintiffs-appellants, Willis and Annette Boice, had not suffered an unconstitutional taking of their property by the denial of a variance request and enforcement of a zoning ordinance. Appellants now challenge that judgment through the following "issues for review," which we construe as assignments of error: *Page 2 
 {¶ 2} "1. Whether the trial court erred as a matter of law by finding that there can be no regulatory taking as a result of a retroactive application of a new zoning statute that causes a substantial diminution in fair market value but not a total diminution in fair market value to the effected property.
 {¶ 3} "2. Whether the trial court erred as a matter of law on appellant by not placing the burden on appellee to prove that the retroactive application of the zoning statute substantially advanced legitimate state interests."
 {¶ 4} The facts of this case are undisputed. In 1974, appellants purchased two adjoining lots in the village of Ottawa Hills. Parcel 1, located at 2570 Westchester Road, included a home that was built in 1941. Parcel 2, located at 2550 Westchester Road, was vacant. The home on Parcel 1, however, extended slightly onto Parcel 2. In approximately 1926, Parcel 1 and Parcel 2 were platted as two separate lots and the plat was filed and accepted by the village of Ottawa Hills. In 1973, Robert and Kate Foster, who then owned both properties, reconfigured the lots by detaching a portion of Parcel 2 and adding it to Parcel 1 so that the house no longer sat across the lot line. Appellees the village of Ottawa Hills and its Zoning Commission approved the reconfiguration of the lot line. As a result of this reconfiguration, the square footage of Parcel 2 was reduced to approximately 32,000 square feet. When the parcels were reconfigured, and the following year when appellants purchased them, they were located in an A-4 zoning district. At that time, the minimum lot area requirement to build a single family *Page 3 
residence in an A-4 district was 15,000 square feet. As such, when the lots were reconfigured and when appellants purchased them, Parcel 2 was a buildable lot.
 {¶ 5} On May 15, 1978, the Council of the Village of Ottawa Hills ("council") passed Ordinance 78-5, amending its zoning code. Under Article VII, Section 7.1 of Ordinance 78-5, the minimum lot area requirement to build a single family residence in an A-4 district was increased to 35,000 square feet. Subsequently, in 2002, the council again amended its zoning code. Through this amendment, Zoning Code Ordinance 2002-08, the council, in part, adopted a new district map which placed the two parcels at issue in a newly created A-12 zoning district. The minimum lot area requirement to build a single family residence in that district, however, remained 35,000 square feet.
 {¶ 6} In 2004, appellants inquired of and were informed by the Ottawa Hills Village Manager that they could no longer build on Parcel 2 because the size of the lot did not meet the 35,000 square foot requirement. Appellants appealed that decision to the Zoning Commission of Ottawa Hills ("zoning commission"). They also requested a variance from the 35,000 square foot requirement or, if the variance was denied, a lot split which would reconfigure the line between Parcels 1 and 2 so as to increase the size of Parcel 2 to greater than 35,000 square feet. The zoning commission held a public meeting on August 19, 2004, at which they considered appellants' requests. A number of Ottawa Hills residents expressed their opposition to the variance request for a number of reasons, including fear that it would set a precedent, housing density, and the general aesthetics of the area. Appellants' son, on behalf of appellants, responded that the *Page 4 
original 1926 plat of the area showed two separate lots, that there was no evidence that the original developers of the plat intended to restrict the lot size to 35,000 square feet, that it had consistently been their understanding that Parcel 2 was a buildable parcel, and that they had paid taxes on the property as if it were a buildable parcel for many years. Upon consideration, the commission voted unanimously to deny the variance request.
 {¶ 7} The commission then proceeded to consider the request for a lot split that would increase the size of Parcel 2. Again, the request was opposed by a number of residents and again the request was denied. Members of the commission stated that the denial was based on the lot size, green space, lot frontage and the effect on the neighborhood. In particular, one commission member stated that the surrounding parcels on Westchester Road were substantially larger than the proposed parcel.
 {¶ 8} On October 24, 2004, appellants filed a notice of administrative appeal with the Lucas County Court of Common Pleas to challenge the decisions of Ottawa Hills and its zoning commission. Appellants filed the appeal pursuant to R.C. 2505.01 et seq. and R.C. 2506.01 et seq. In their notice of appeal, appellants asserted that the decision of the zoning commission was erroneous, an abuse of discretion, procedurally defective, illegal, void, arbitrary, capricious, unreasonable, and/or unsupported by the preponderance of any substantial, reliable, or probative evidence. Appellants also asserted that the decision constituted an unconstitutional confiscation and taking of real property without just compensation and that the 1978 zoning amendment was unconstitutional and unenforceable due to lack of proper notice. Appellants prayed in relevant part for an *Page 5 
order reversing the decision of the Ottawa Hills Zoning Commission, declaring that Parcel 2 is a buildable lot, and declaring that the decision of the Ottawa Hills Zoning Commission was unconstitutional, capricious, unreasonable and/or unsupported by a preponderance of substantial, reliable and probative evidence, and constituted an unlawful confiscation and taking of property.
 {¶ 9} In their brief filed before the lower court, appellants argued that the retroactive application of the zoning amendment to their property was a regulatory taking without just compensation in violation of both the Ohio and United States Constitutions. As a remedy, appellants sought a finding by the lower court that the zoning amendment was unconstitutional and void as applied to appellants' property and that Parcel 2 is a buildable lot in the same manner it was prior to the application of the zoning code amendment. They did not seek compensation for the alleged taking. As an additional basis for reversal, appellants argued that the retroactive application of the zoning amendment to Parcel 2 violated the public purpose in that it was arbitrary, capricious, unreasonable, or unsupported by a preponderance of substantial, reliable and probative evidence.
 {¶ 10} Appellants also filed in the court below a motion pursuant to R.C. 2506.03 to submit additional evidence in support of their appeal. Specifically, appellants sought to submit an appraisal and supporting affidavit from a local professional appraiser regarding the value of Parcel 2 and the affidavit of Peter Boice, appellants' son, attesting to the facts that were raised at the hearing by him but which were not stated under oath. *Page 6 
Ultimately, the lower court denied appellants' motion to submit the affidavit of Peter Boice, finding that the court's determination of the non-constitutional issues would be confined to the record of the administrative proceedings. The court did, however, determine that evidence regarding the value of the Parcel 2 was essential to a determination of the taking issue. The court, therefore, in an opinion and judgment entry of February 14, 2006, granted in part appellants' motion to submit additional evidence and determined that both parties could submit additional evidence relevant to the constitutionality of the ordinance as applied to Parcel 2. In that same entry, the court found, pursuant to R.C. 2506.04 and upon a review of the transcript of the administrative proceedings, that the decision of the Ottawa Hills Zoning Commission was not illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence.
 {¶ 11} The lower court subsequently held a hearing on the taking issue at which appellees orally moved for a judgment on the pleadings. The court took the matter under advisement and granted the parties leave to brief the issues. On June 9, 2006, the lower court issued a decision and order affirming the decision of the zoning commission. The court held that Zoning Code Ordinance 2002-08 is not unconstitutional as applied to Parcel 2 and held that the application of Zoning Code Ordinance 2002-08 to Parcel 2 does not constitute a taking of real property. Appellants now challenge that judgment on appeal. *Page 7 
 {¶ 12} Initially, we must address the issue raised by appellees both before the lower court and this court, as to whether appellants could properly challenge the constitutionality of the zoning ordinance through an administrative appeal. Appellees assert that the lower court was restricted to reviewing the matter as an administrative appeal under R.C. Chapter 2506 because appellants did not seek to challenge the zoning ordinance through a declaratory judgment or mandamus action. The lower court determined that while a declaratory judgment action was a proper method of challenging the constitutionality of a zoning ordinance, "[f]iling a separate declaratory judgment action in addition to the administrative appeal would be duplicative and unnecessary, and [would not be] in the interest of judicial economy." We agree, but further note that in an appeal filed pursuant to R.C. Chapter 2506, a reviewing court is limited to determining the constitutionality of a zoning regulation only in light of a specific proposed use. As the court in Grossman v. Cleveland Hts. (1997), 120 Ohio App.3d 435, 439-440, explained :
 {¶ 13} "It is undisputed that a declaratory judgment action is available to raise the issue of the constitutionality of a zoning ordinance. [SMC, Inc. v. Laudi (1975), 44 Ohio App.2d 325,] 328, * * * citing Kaufman v. Newburgh Hts. (1971), 26 Ohio St.2d 217 * * *;Burt Realty Corp. v. Columbus (1970), 21 Ohio St.2d 265 * * *. TheSMC court was presented with a challenge to the constitutionality of an ordinance as applied to a particular parcel brought pursuant to R.C. Chapter 2506. After examining the pronouncements by the Ohio Supreme Court in State ex rel. Sibarco Corp. v. Berea *Page 8 
(1966), 7 Ohio St.2d 85 * * *; and Mobil Oil Corp. v. Rocky River
(1974), 38 Ohio St.2d 23 * * *, the court determined that a litigant should not be required to separately file an appeal of the administrative decision and a declaratory judgment challenging the constitutionality as applied of the ordinance at issue. SMC, Inc. v.Laudi, supra 44 Ohio App.2d at 328 * * *.
 {¶ 14} "The SMC court reasoned that issues over which a board of zoning appeals has jurisdiction are often intertwined with issues of constitutionality. The majority believed that permitting a litigant to use an R.C. Chapter 2506 appeal to address the issue of the constitutionality of a zoning ordinance as applied would expedite zoning litigation. An administrative agency does not have the authority to determine the issue of constitutionality. SMC, Inc. v. Laudi, id. at 330 * * *. Therefore, the constitutionality of zoning restrictions must be tried de novo by the common pleas court. Id. at paragraph three of the syllabus.
 {¶ 15} "The R.C. Chapter 2506 appeal claims that a prohibition against a specific proposed use is unconstitutional. Karches v. Cincinnati
(1988), 38 Ohio App.3d 12, 16 * * *. In other words, it claims that * * * the ordinance is unconstitutional when applied to the specific property at issue. The duty of the trial court is to determine whether the prohibition has any reasonable relationship to the municipality's legitimate exercise of police power. Id. In contrast, the declaratory judgment action challenges the constitutionality of an existing ordinance per se. Id. That is, the declaratory judgment *Page 9 
addresses the ordinance more broadly, challenging the constitutionality of the ordinance on its face."
 {¶ 16} Accordingly, upon the denial of their request for a variance and/or lot split, appellants had the following options:
 {¶ 17} "1. Appellants] could have filed an R.C. Chapter 2506 appeal, challenging the [zoning commission's] denial of [their] request for a variance on the grounds that it was not supported by a preponderance of the reliable, probative and substantial evidence.
 {¶ 18} "2. Appellants] could have challenged the constitutionality of the ordinance as applied to [their] specific property per R.C. Chapter 2506.
 {¶ 19} "3. Appellants] could have filed a declaratory judgment action contesting the constitutionality of the ordinance on its face."Grossman, supra at 441.
 {¶ 20} Appellants followed both option one and option two, and nowhere in any of their briefs before this court or the lower court have they challenged the constitutionality of the ordinance on its face. As such, they were not required to file a declaratory judgment action.
 {¶ 21} As to whether appellants were required to file a mandamus action, such an action is the proper vehicle for obtaining compensation for an unlawful taking. State ex rel. Levin v. Sheffield Lake (1994),70 Ohio St.3d 104, 108. That is, the property owner files a mandamus action to compel a public authority to initiate appropriation proceedings to determine the property owner's right to compensation for the property taken. Id. In the present case, appellants did not seek compensation for the property that they alleged *Page 10 
was taken. Rather, they sought an order that the zoning ordinance is unconstitutional as applied to their property, that the application of the ordinance to their property is confiscatory and constitutes an unconstitutional taking, and an order that the ordinance cannot be applied to Parcel 2.
 {¶ 22} Accordingly, the constitutional issues were properly before the lower court.
 {¶ 23} We will now address appellants' assignments of error. In their first assignment of error, appellants assert that the lower court erred in concluding that to prove a regulatory taking, appellants were required to prove a total diminution in the fair market value of their property. Rather, appellants contend, pursuant to United States Supreme Court authority, a regulatory taking can be established where there has been a substantial, but not total, diminution in the value of real property.
 {¶ 24} In rejecting appellants' claim that the Ottawa Hills Zoning Ordinance as applied to Parcel 2 amounted to an unconstitutional taking of their property, the lower court looked to the standards set forth by the Supreme Court of Ohio in Karches v. Cincinnati (1988),38 Ohio St.3d 12, and Goldberg Cos., Inc. v. Richmond Hts. City Council (1998),81 Ohio St.3d 207. In Goldberg Cos., at 209, the court reiterated two longstanding principles of zoning law: "(1) Zoning ordinances are presumed constitutional. * * * [and] (2) The party challenging the constitutionality of a zoning ordinance bears the burden of proof and must prove unconstitutionality beyond fair debate." (Citations omitted.) The court in Goldberg Cos. further discussed the difference *Page 11 
between a constitutional challenge to an ordinance as applied to a parcel of land and a constitutional challenge that also alleges that a taking of the property has occurred:
 {¶ 25} "The first seeks only a prohibition against the application of the ordinance to the property, whereas with the second, the landowner seeks compensation for a taking of the affected property. Although both types of cases allege the unconstitutionality of a zoning ordinance, in order for the landowner to prove a taking, he or she must prove that the application of the ordinance has infringed upon the landowner's rights to the point that there is no economically viable use of the land and, consequently, a taking has occurred for which he or she is entitled to compensation. A court may determine that a zoning ordinance is constitutional; however, the ordinance may nevertheless constitute a taking as applied to a particular piece of property, entitling the landowner to compensation." Id. at 210.
 {¶ 26} Then, in Goldberg Cos., the court clarified the appropriate standard applicable to constitutional challenges of zoning:
 {¶ 27} "A zoning regulation may be either constitutional or unconstitutional based upon whether it is `clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare' regardless of whether it has deprived the landowner of all economically viable uses of the land.Euclid v. Ambler [(1926)], 272 U.S. [365], 395 * * *. If the landowner has challenged the constitutionality of zoning and also alleged that it constitutes a taking of property, the case is terminated if the zoning is found to be unconstitutional, because the landowner is free of the zoning that restricted *Page 12 
the use of the land. However, if the zoning is determined to be constitutional, a court may then consider whether the zoning, as applied to this property, constitutes a taking so as to entitle the owner to compensation. In such a case, the zoning remains in effect as a legitimate exercise of police power for the public welfare."
 {¶ 28} In the proceeding below, the court followed this standard and first determined that the zoning ordinance requiring a minimum of 35,000 square feet for construction of a home was not arbitrary or unreasonable or substantially unrelated to the public health, safety, morals or general welfare of the village of Ottawa Hills. Accordingly, the court held that the ordinance as applied to Parcel 2 was constitutional. Pursuant to the standard set forth above in Goldberg Cos., the court then proceeded to determine whether the ordinance as applied to Parcel 2 constituted a taking entitling appellants to compensation. In evaluating a taking issue, Goldberg Cos. and Karches, supra, directed courts to the United States Supreme Court's holding in Agins v. Tiburon (1980),447 U.S. 255. In Agins, the Supreme Court determined that "[t]he application of a general zoning law to particular property effects a taking if the ordinance does not substantially advance legitimate state interests * * * or denies an owner economically viable use of his land * * *." Id. at 260. Subsequently, however, the United States Supreme Court reevaluated the standards applicable to takings cases and determined that the "substantially advances" prong "prescribes an inquiry in the nature of due process, not a takings, test, and that it has no proper place in our takings jurisprudence." Lingle v. *Page 13 Chevron (2005), 544 U.S. 528, 540. Lingle is now the controlling case law in evaluating takings claims.
 {¶ 29} "The United States and Ohio Constitutions guarantee that private property shall not be taken for public use without just compensation. Fifth and Fourteenth Amendments to the United States Constitution; Section 19, Article I, Ohio Constitution." State ex rel.Elsass v. Shelby Cty. Bd. Of Commrs. (2001), 92 Ohio St.3d 529, 533. "As its text makes plain, the Takings Clause `does not prohibit the taking of private property, but instead places a condition on the exercise of that power.' First English Evangelical Lutheran Church of Glendale v.County of Los Angeles, [(1987)] 482 U.S. 304, 314 * * *. In other words, it `is designed not to limit the governmental interference with property rights per se, but rather to secure compensation in the event of otherwise proper interference amounting to a taking.' Id. at 315 * * *."Lingle, supra at 536-537. "In order to establish a taking, a landowner must demonstrate a substantial or unreasonable interference with a property right. * * * Such an interference may involve the actual physical taking of real property, or it may include the deprivation of an intangible interest in the premises." State ex rel. OTR v.Columbus (1996), 76 Ohio St.3d 203, 206. (Citations omitted.)
 {¶ 30} In Lingle, 544 U.S. at 538-540, the United States Supreme Court identified three distinct categories of regulatory takings as follows:
 {¶ 31} "Our precedents stake out two categories of regulatory action that generally will be deemed per se takings for Fifth Amendment purposes. First, where government *Page 14 
requires an owner to suffer a permanent physical invasion of her property — however minor — it must provide just compensation. SeeLoretto v. Teleprompter Manhattan CATV Corp., 458 U.S. 419 * * * (1982) (state law requiring landlords to permit cable companies to install cable facilities in apartment buildings effected a taking). A second categorical rule applies to regulations that completely deprive an owner of 'all economically beneficial us[e]' of her property. Lucas [v. SouthCarolina Coastal Council (1992)], 505 U.S. [1003], 1019 * * * (emphasis in original). We held in Lucas that the government must pay just compensation for such `total regulatory takings,' except to the extent that `background principles of nuisance and property law' independently restrict the owner's intended use of the property. Id, at 1026-1032 * * *.
 {¶ 32} "Outside these two relatively narrow categories * * * regulatory takings challenges are governed by the standards set forth inPenn Central Transp. Co. v. New York City, 438 U.S. 104 * * * (1978). The Court in Penn Central acknowledged that it had hitherto been `unable to develop any "set formula"` for evaluating regulatory takings claims, but identified `several factors that have particular significance.'Id, at 124 * * *. Primary among those factors are `[t]he economic impact of the regulation on the claimant and, particularly, the extent to which the regulation has interfered with distinct investment-backed expectations.' Ibid. In addition, the `character of the governmental action' — for instance whether it amounts to a physical invasion or instead merely affects property interests through `some public program adjusting the benefits and burdens of economic life to promote the common good' — may be relevant in discerning whether a *Page 15 
taking has occurred. Ibid. The Penn Central factors — though each has given rise to vexing subsidiary questions — have served as the principal guidelines for resolving regulatory takings claims that do not fall within the physical takings or Lucas rules. See, e.g., Palazzolo v.Rhode Island [2001], 533 U.S. 606, 617-618 * * * (O'CONNOR, J. concurring).
 {¶ 33} "Although our regulatory takings jurisprudence cannot be characterized as unified, these three inquires (reflected inLoretto, Lucas, and Penn Central) share a common touchstone. Each aims to identify regulatory actions that are functionally equivalent to the classic taking in which government directly appropriates private property or ousts the owner from his domain. Accordingly, each of these tests focuses directly upon the severity of the burden that government imposes upon private property rights. The Court has held that physical takings require compensation because of the unique burden they impose: A permanent physical invasion, however minimal the economic cost it entails, eviscerates the owner's right to exclude others from entering and using her property — perhaps the most fundamental of all property interests. * * * In the Lucas context, of course, the complete elimination of a property's value is the determinative factor. SeeLucas, supra, at 1017 * * * (positing that `total deprivation of beneficial use is, from the landowner's point of view, the equivalent of a physical appropriation'). And the Penn Central inquiry turns in large part, albeit not exclusively, upon the magnitude of a regulation's economic impact and the degree to which it interferes with legitimate property interests." *Page 16 
 {¶ 34} In evaluating appellants' takings claim, the lower court determined that, because evidence established that Parcel 2, as a nonbuildable lot, had a value of $38,000, appellants had not shown a lack of an economically viable use of the land. That is, the court viewed the takings claim under the Lucas standards. We find this to be in error because appellants have never alleged a total regulatory taking. Rather, the facts of the present case required an analysis underPenn Central and its progeny in that appellants essentially asserted that the zoning ordinance interfered with distinct investment-backed expectations. Since its inception, Parcel 2 has always been platted as a separate lot. When the Fosters, appellants' predecessors in title, reconfigured the lots, and when appellants purchased the lots, Parcel 2 remained a buildable lot. Robert Domini, who conducted an appraisal of Parcel 2 and whose affidavit was submitted to the court below, stated that as a buildable lot, the value of the fee simple interest in Parcel 2 was $190,000 but that as a non-buildable lot, said interest was $38,000. Domini also stated that as a non-buildable lot, the only possible use of the parcel was green space and the only potential buyers were the few abutting property owners, as opposed to the thousands of prospective buyers there would be if the lot were buildable. That is, while the property may have a fee simple value, absent a variance, Parcel 2 is effectively useless. See, generally, Negin v. Bd. Of Bldg.and Zoning Appeals (1982), 69 Ohio St.2d 492; Shankel v. City ofCanton, 5th Dist. No. 2006-CA-00004, 2006-Ohio-4070; Pengal v. City ofMentor-on-the-Lake, 11th Dist. No. 2004-L-158, 2005-Ohio-5118. *Page 17 
 {¶ 35} We therefore conclude that the trial court erred in finding that no taking had occurred in appellees' enforcement of its zoning ordinance and denial of appellants' variance request, without first evaluating the case pursuant to the United States Supreme Court's standards set forth in Lingle, supra and Penn Central, supra. The first assignment of error is well-taken.
 {¶ 36} In their second assignment of error, appellants assert that the lower court erred in placing upon them the burden of proof with regard to whether the zoning ordinance at issue substantially advanced a legitimate governmental interest. We find this assignment of error well-taken to the extent that whether a zoning ordinance substantially advances a legitimate governmental interest is no longer a valid question in regulatory takings analysis. Lingle, supra. Nevertheless, we restate here the well-settled principle of constitutional law that "[t]he party challenging the constitutionality of a zoning ordinance bears the burden of proof and must prove unconstitutionality beyond fair debate." Goldberg Cos., supra at 209.
 {¶ 37} On consideration whereof, the court finds that substantial justice has not been done the parties complaining, and the judgment of the Lucas County Court of Common Pleas is reversed. This case is remanded to that court for a redetermination of the regulatory takings issue in light of the correct standards as set forth above. Appellees are ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the *Page 18 
clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
JUDGMENT REVERSED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4.
Peter M. Handwork, J., JUDGE, Mark L. Pietrykowski, P.J., JUDGE, Arlene Singer, J. CONCUR. *Page 1