BOICE ET AL., APPELLANTS, *v.* VILLAGE OF OTTAWA HILLS ET AL., APPELLEES.

[Cite as *Boice v. Ottawa Hills*, 137 Ohio St.3d 412, 2013-Ohio-4769.]

*Real property—Zoning—Variance—Amendment to minimum size requirement for "buildable" lot enacted after purchase of vacant lot cannot be enforced to prevent construction on lot after amendment.*

(No. 2012-0413—Submitted March 12, 2013—Decided November 7, 2013.)

APPEAL from the Court of Appeals for Lucas County,

No. L-09-1253, 2011-Ohio-5681.

_____

O'NEILL, J.

{¶ 1} Plaintiffs-appellants, the Boices, owned a piece of real estate adjacent to their suburban residence for over 30 years. In 2004, defendant-appellee village of Ottawa Hills denied their request for a variance seeking to have the vacant 33,000-square-foot residential lot declared a "buildable" lot. The zoning code at that time included a requirement that no structure could be built on a lot smaller than 35,000 square feet, which was 2,000 square feet larger than the lot owned by plaintiffs. This new size restriction was enacted in 1978, four years after plaintiffs purchased the lot. When the lot was purchased in 1974, the minimum buildable lot size was 15,000 square feet. Plaintiffs also owned the adjoining lot, upon which their residence was situated. It is undisputed that other landowners in the village built homes on lots smaller than 35,000 square feet subsequent to the 1978 change in zoning regulations.

## I. Facts and Procedural History

{¶ 2} The two plaintiffs in this case, Willis and Annette Boice, purchased two adjacent lots in the village of Ottawa Hills in 1974. One of the lots contained a house, and the other was vacant. Plaintiffs lived in that house for the next 30

years. The lot with the house was 57,000 square feet, and the vacant lot was 33,000 square feet.[1] The minimum size for a buildable lot in 1974 was 15,000 square feet.

{¶ 3} In 1978, the village amended its zoning requirements to increase the buildable-lot size to 35,000 square feet. Then, in 2004, plaintiffs sold the lot containing their residence. They sought approval from the village manager to have the smaller lot declared a buildable lot so that they could sell that as well. The village manager denied their request, informing them that because the lot was smaller than 35,000 square feet, it was not a buildable lot. This decision was reached despite the fact that there were other houses in plaintiffs' plat that were built on lots smaller than 35,000 square feet after the 1978 zoning amendment.

{¶ 4} Plaintiffs appealed that decision to defendant-appellee Ottawa Hills Zoning Commission, also seeking a variance, but their appeal and the variance were denied. On October 20, 2004, plaintiffs filed an appeal pursuant to R.C. 2505.01 et seq. and 2506.01 et seq. in the Lucas County Common Pleas Court. The court upheld the zoning commission's decision, finding that the zoning amendment was not unconstitutional, that there was no taking, and that the denial of the variance was supported by the record. That decision was appealed to the Sixth District Court of Appeals, which determined that the trial court had used the incorrect standard in its regulatory-taking analysis and, therefore, reversed and remanded for further proceedings. *Boice v. Ottawa Hills,* 6th Dist. Lucas No. L-06-1208, 2007-Ohio-4471.

{¶ 5} The matter went back to the trial court on remand to address the issue of a regulatory taking. On August 28, 2009, the trial court determined that a taking had not occurred because plaintiffs never took any affirmative steps to

---

1. The two lots in question were originally platted in 1926 as a 46,000-square-foot lot and a 44,000-square-foot lot. However, the size of each lot was adjusted by the previous owner in 1973 with the approval of the village.

build a house on the lot. This decision was appealed to the Sixth District Court of Appeals, which ultimately affirmed the decision. *Boice v. Ottawa Hills,* 6th Dist. Lucas No. L-09-1253, 2011-Ohio-5681. The appellate court acknowledged that plaintiffs had been paying property taxes on the lot as a buildable lot for over 30 years. It also recognized that in the middle of the present controversy, the Lucas County auditor reappraised the property in 2006 and reduced the market value from $233,500 to $23,400, presumably because the lot was no longer considered buildable. Yet the trial court and the appellate court concluded that because the plaintiffs had never used the vacant parcel as a buildable lot, they never acquired a vested right to use the land as a buildable lot. For the following reasons, we disagree.

{¶ 6} The disparate treatment of the plaintiffs, combined with the de minimis difference between the size of the lot and the minimum required size and the provision in a village ordinance that requires the village to "grandfather in" plaintiffs' lot as a buildable lot lead us to the conclusion that the trial court's decision was unreasonable and arbitrary and, accordingly, was an abuse of discretion. Hence, the decision of the appellate court must be reversed.

## II. Analysis

{¶ 7} The trial court's standard for reviewing an administrative appeal is whether the administrative order is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence in the record. *Henley v. Youngstown Bd. of Zoning Appeals*, 90 Ohio St.3d 142, 147, 735 N.E.2d 433 (2000); R.C. 2506.04. Then, on appeal, an appellate court conducts a more limited review. The appellate court reviews the trial court's decision only on questions of law to determine whether the lower court abused its discretion in finding that the administrative order was supported by reliable, probative, and substantial evidence. *Kisil v. Sandusky*, 12 Ohio St.3d 30, 34, 465 N.E.2d 848 (1984).

**{¶ 8}** Plaintiffs have set forth two propositions of law, but the second one is dispositive of this appeal and, accordingly, it will be addressed first. Plaintiffs contend that they had a vested right in the lot's status as buildable that continued beyond the 1978 zoning amendment. We agree. This argument is, in reality, a grandfathering-in claim.

**{¶ 9}** Under the theory espoused by plaintiffs, the two lots they purchased in 1974 were undisputedly buildable lots at the time of purchase. Whether or not plaintiffs ever intended to build on the vacant lot is irrelevant. It was purchased as a buildable lot, they paid for and received a buildable lot, and they paid taxes on it for over 30 years as a buildable lot. In short, the village simply had a change of heart in 1978 and decided to make this particular lot, as opposed to its neighbors, worthless. For the Sixth District Court of Appeals to conclude that it was not a buildable lot because plaintiffs never actually began construction on the lot between the 1974 purchase and the 1978 zoning amendment is contrary to law. It ignores well-settled land-ownership rights in this country.

**{¶ 10}** In regard to the principles of zoning, this court has stated that, generally, "[z]oning resolutions are in derogation of the common law and deprive a property owner of certain uses of his land to which he would otherwise be lawfully entitled," and, accordingly, "such resolutions are ordinarily construed in favor of the property owner." *Saunders v. Clark Cty. Zoning Dept.*, 66 Ohio St.2d 259, 261, 421 N.E.2d 152 (1981). There is a balancing that takes place between an owner's use of his private property and the necessity of government to exercise its power in the best interests of the public. In *Gerijo, Inc. v. Fairfield*, 70 Ohio St.3d 223, 225, 638 N.E.2d 533 (1994), this court stated:

> [T]he Ohio Constitution explicitly subjects the right of an individual to use and enjoy his or her property to the legitimate exercise of local police power. See Section 3, Article XVIII.

4

> Inasmuch as the exercise of police power interferes with individual rights, the use of such power must bear a substantial relationship to a legitimate government interest and must not be unreasonable or arbitrary.

With this in mind, we will address the specific facts in the present case.

{¶ 11} The lots in this section of Ottawa Hills were platted in 1926 when the minimum square footage for a buildable lot was 15,000 square feet. In 1973, prior to plaintiffs acquiring these lots, the previous owner transferred part of one lot to the other lot to accommodate a driveway. This was done with the approval of the village. The end result was that there were still two lots that exceeded the 15,000-square-foot requirement, thereby qualifying as buildable lots. Plaintiffs purchased the two lots in 1974, and everyone agrees that the plaintiffs could have built a house on the smaller lot, without seeking a variance, at any time up until the zoning amendment in 1978, which increased the minimum buildable lot size to 35,000 square feet.

{¶ 12} After 1978, several property owners with lots that had been platted in 1926 and that were smaller than 35,000 square feet built residences on their lots. The only difference between plaintiffs' lot and the others is that the other lots were all unchanged since 1926, whereas plaintiffs' parcel had been changed in size in 1973. However, defendants are unable to explain why this fact justifies the disparate treatment. Even with the changes approved by the village in 1973, the lots that plaintiffs purchased in 1974 were platted, buildable lots, with no cognizable differences from the other lots that had been platted 47 years earlier.

{¶ 13} Yet the zoning commission, the trial court, and the Sixth District concluded that the village had correctly denied plaintiffs' request to have their lot declared to be a buildable lot. In *Kisil v. Sandusky,* 12 Ohio St.3d 30, 465 N.E.2d 848, syllabus, this court held that the standard for granting a variance for area

requirements is a lesser standard than when a use variance is at stake: the applicant need only show practical difficulties rather than unnecessary hardship. This court has stated:

> [T]he factors to be considered and weighed in determining whether a property owner seeking an area variance has encountered practical difficulties in the use of his property include, but are not limited to: (1) whether the property in question will yield a reasonable return or whether there can be any beneficial use of the property without the variance; (2) whether the variance is substantial; (3) whether the essential character of the neighborhood would be substantially altered or whether adjoining properties would suffer a substantial detriment as a result of the variance; (4) whether the variance would adversely affect the delivery of governmental services (*e.g.,* water, sewer, garbage); (5) whether the property owner purchased the property with knowledge of the zoning restriction; (6) whether the property owner's predicament feasibly can be obviated through some method other than a variance; (7) whether the spirit and intent behind the zoning requirement would be observed and substantial justice done by granting the variance.

*Duncan v. Middlefield,* 23 Ohio St.3d 83, 491 N.E.2d 692 (1986), syllabus.

{¶ 14} When these questions are overlaid against the facts in this case, it becomes evident that the plaintiffs demonstrated that they have encountered practical difficulties as a result of the 1978 zoning amendment, and their request for a variance should have been granted. Clearly, when, as here, a lot in a residential neighborhood has been deemed unbuildable, the pool of potential

buyers would almost certainly be limited to adjoining property owners, and its value would be much reduced. Additionally, the variance is not substantial in that the current lot minimum is 35,000 square feet, and plaintiffs' lot is 33,000 square feet, or 94 percent of the necessary square footage. Looking at the third factor, the essential character of the neighborhood would not be substantially altered, as there are numerous homes in the neighborhood that are built on lots smaller than 35,000 square feet. And as to the fourth factor, the granting of the variance would have no effect on the delivery of governmental services such as water, sewer, or garbage.

{¶ 15} Under the fifth factor, it is undisputed that plaintiffs purchased the lot before the enactment of the size restriction of 35,000 square feet. At the time of purchase, plaintiffs' lot was a buildable lot. With regard to the sixth factor, plaintiffs' predicament cannot be obviated through any means other than a variance. Finally, whether the spirit and intent of the zoning requirement would be observed by granting the variance is open to debate, but this factor is just one of many in the nonexhaustive list set forth in the *Duncan* decision, and no single factor is controlling. *Id.* at 86.

{¶ 16} Thus, under the analysis that is applicable to determining whether a variance should have been granted, the appropriate result would have been to grant the variance in this case. The factors in favor of such a result heavily outweigh those against.

{¶ 17} We conclude that there are three pillars that support the reversal of the Sixth District Court of Appeals' decision. First, under a "grandfathering-in" analysis, the lot in question was purchased as a buildable lot in 1974, and, when the village decided to increase the minimum buildable lot size in 1978, this lot should have been grandfathered in so as to remain a buildable lot. Under Ottawa Hills Ordinance No. 78-5, the ordinance that increased the minimum lot size, "the lawful use of * * * any land or premises existing at the time of the effective date

of this ordinance * * * may be continued although such use does not conform to the provisions hereof." Article XIII, Section 13.1. If we were to accept the village's argument that until construction has begun on a lot, the lot has no legal "use," and the property owner can have no expectations about the future use of the property, landowners in Ohio would hold title to vacant land at their own peril subject to governmental regulations that can change overnight. This result would eliminate the constitutional protections that people must be afforded with respect to their own private property. *See generally Norwood v. Horney,* 110 Ohio St.3d 353, 2006-Ohio-3799, 853 N.E.2d 1115, ¶ 34-38; Ohio Constitution, Article I, Section 1. It is to be remembered that for 32 years plaintiffs were paying the buildable-lot tax rate in this upscale neighborhood. Indeed, their investment had grown to a nest egg approximating a quarter of a million dollars in value until the village rendered it virtually worthless, causing the county to reduce its market value to $23,400. It was clearly arbitrary for the village to single this lot out for a denial of the grandfathering-in treatment enjoyed by similar lots in the same neighborhood!

{¶ 18} Under the second pillar, this situation involves a de minimis difference. The current zoning calls for a minimum lot of 35,000 square feet, and plaintiffs' lot is 33,000 square feet. This difference is relatively small, and it is patently unreasonable to hold otherwise.

{¶ 19} Finally, there was disparate treatment of residents in the village when it came to permitting houses to be built on lots smaller than 35,000 square feet. In fact, the only residents who were denied this opportunity to have a smaller lot deemed buildable were plaintiffs. All other property owners who applied after the 1978 change in the ordinance were granted permission.

### III. Conclusion

{¶ 20} Under these circumstances, we conclude that the Sixth District Court of Appeals erred in upholding the decision of the Lucas County Common

Pleas Court in this matter. Therefore, we reverse the judgment of the court of appeals and remand the cause to the trial court for further proceedings consistent with this opinion.

Judgment reversed
and cause remanded.

PFEIFER, O'DONNELL, and KENNEDY, JJ., concur.

O'CONNOR, C.J., and LANZINGER and FRENCH, JJ., dissent.

_____

**LANZINGER, J., dissenting.**

{¶ 21} A review of the lengthy record of these proceedings shows that only the regulatory-takings issue is before the court now, all other issues having been waived. We accepted two propositions of law.[2] But rather than answer the question properly before us, the majority holds that the trial court abused its discretion in upholding the zoning decision on grounds that the Boices received disparate treatment, that the difference between the lot size and the minimum lot required by the ordinance was de minimis, and that the variance should have been granted as a "grandfathering-in" claim.

{¶ 22} Because the majority opinion sidesteps well-established principles for determining when a regulatory taking occurs and when vested rights exist, I respectfully dissent and would affirm the judgment of the court of appeals.

I. Procedural History

*Arguments raised in initial trial briefs*

{¶ 23} The Boices have not been consistent in their positions, and a procedural review must be undertaken to see which issues are properly before this court. In their trial court brief, the Boices challenged the decision of the zoning

---

2. Proposition of Law One states: "Elimination of the only permissible use of a parcel of residential property through regulation is a total regulatory taking."

Proposition of Law Two states: "The pre-existing vested rights in property exist independent of a landowner's intent to personally exercise those rights."

commission for two reasons. First, they argued that retroactive application of the zoning amendment to their property "results in it having limited, if any, economically viable use, and nominal fair market value, which constitutes a taking without just compensation." Second, they argued that retroactive application of the zoning amendment "violates the public purpose in that it is unreasonable, arbitrary, capricious, and not supported by the preponderance of the substantial, reliable, and probative evidence on the whole record."

{¶ 24} The Boices requested that the trial court issue an order (1) reversing the zoning commission's decision on grounds that it is an unconstitutional taking without just compensation and ordering the granting of the lot variance, (2) reversing the zoning commission's decision on grounds that it is an unconstitutional taking without just compensation and finding that the zoning amendment cannot be applied to the lot, which remains a buildable lot, and/or (3) finding that retroactive application of the zoning amendment violates the public purpose of the statute and that the zoning amendment does not apply to the lot, which remains a buildable lot.

*Trial court and appellate court decisions*

{¶ 25} In reviewing the zoning board's administrative action, the trial court concluded that the zoning regulation as applied to the Boices' property was constitutional and that the Boices did not suffer a compensable taking of their property. The Boices appealed to the Sixth District, setting forth two "issues for review," which the court construed as assignments of error:

> 1. Whether the trial court erred as a matter of law by finding that there can be no regulatory taking as a result of a retroactive application of a new zoning statute that causes a substantial diminution in fair market value but not a total diminution in fair market value to the effected [sic] property.

10

> 2. Whether the trial court erred as a matter of law on appellant by not placing the burden on appellee to prove that the retroactive application of the zoning statute substantially advanced legitimate state interests.

*Boice v. Ottawa Hills,* 6th Dist. Lucas No. L-06-1208, 2007-Ohio-4471, ¶ 1-3. Each of these assignments of error attacked the trial court's reasoning in concluding that no compensable taking had occurred.

{¶ 26} The Sixth District, determining that the trial court had used the incorrect standard of analysis for the regulatory-taking claim, remanded the case to the trial court to redetermine that issue using the standard on partial regulatory takings. *Id.* at ¶ 37. Ottawa Hills appealed the Sixth District's judgment to this court, but we declined to accept. *Boice v. Ottawa Hills,* 116 Ohio St.3d 1478, 2008-Ohio-153, 879 N.E.2d 785.

{¶ 27} On remand, the trial court concluded that "no unconstitutional taking has occurred with respect to [the lot] and the Boices have not established [the lot's] nonconforming use as a buildable lot" and accordingly entered judgment in favor of Ottawa Hills. The Boices appealed that judgment and raised six assignments of error. The fourth argued that the trial court erred by not addressing their claim that they were subject to disparate treatment, while the sixth raised a "grandfathering-in" claim. No assignment of error raised an argument that the variance request was de minimis because the lot in question is substandard by only 2,000 square feet. *Boice v. Ottawa Hills,* 6th Dist. Lucas No. L-09-1253, 2011-Ohio-5681, ¶ 14-19.

{¶ 28} The Sixth District held that the Boices' disparate-treatment claim was beyond the scope of the remand and that the trial court therefore did not err in failing to address the issue. *Id.* at ¶ 43. The court of appeals also rejected the grandfathering-in claim after noting that the Boices never used the lot as a

buildable lot and that they failed to request a variance or seek in any other way to establish the lot as a valid nonconforming use upon the enactment of the zoning regulation in 1978. *Id.* at ¶ 49.

{¶ 29} In the case now before us, instead of analyzing the Boices' taking claim, the majority cites *Duncan v. Middlefield*, 23 Ohio St.3d 83, 491 N.E.2d 692 (1986), and redetermines whether a variance should have been granted. But the point of this appeal is not whether the variance should have been granted. The point is whether the denial of the variance effected a taking. For the first time, the Boices claim that the denial of the variance was a total regulatory taking and affected their "pre-existing rights." The convoluted and conflicting arguments in this case should not be the foundation upon which a drastic change in zoning law is made.

## II. Majority Opinion

{¶ 30} The three "pillars" supporting the majority opinion rest on arguments that were either waived on appeal or properly dealt with by the court of appeals.

*"Grandfathering in" of a buildable lot*

{¶ 31} The Boices' second proposition of law essentially argues that because the Boices could have built a house on the lot when they purchased it had they so desired, they forever preserved the right to build a house on the lot. Their argument hinges upon how the word "use" is interpreted in the zoning amendment, which provides that "the lawful *use* of * * * any land or premises *existing* at the time of the effective date of this ordinance * * * may be continued although such use does not conform to the provisions hereof." (Emphasis added.) Ottawa Hills Ordinance No. 78-5. The court of appeals correctly held that the lot could not be "grandfathered in" as a buildable lot since the Boices never built upon the lot and never requested a variance or sought to establish a valid nonconforming use upon the enactment of the zoning regulation in 1978.

{¶ 32} Part of the confusion in this case relates to the characterization of the Boices' lot as "buildable."  The ability to build upon a lot is a mere expectation of a use—it is not a use in and of itself.

{¶ 33} Until now, the term "nonconforming use" has referred to "a use of property which was lawful prior to the enactment of a zoning ordinance" and which "may be continued after the effective date of the ordinance even though it does not comply with the applicable use restrictions.  R.C. 713.15; *State v. Pierce* (1956), 164 Ohio St. 482, 132 N.E.2d 102."  (Emphasis deleted.)  *C.D.S., Inc. v. Gates Mills*, 26 Ohio St.3d 166, 168, 497 N.E.2d 295 (1986).  Since 1957, R.C. 713.15 has specified that to establish a valid nonconforming use, the property must actually *be used in that manner* at the time of the enactment or amendment of the zoning ordinance:  "The lawful use of any dwelling, building, or structure and of any land or premises, as *existing* and lawful at the time of enacting a zoning ordinance or an amendment to the ordinance, may be continued, although such use does not conform with the provisions of such ordinance or amendment * * *."  (Emphasis added.)

{¶ 34} The Boices never *used* this property as anything but a side yard for their home.  Mere characterization of a piece of property as "buildable" describes a potential use, not an existing or actual use.  It is simply a possibility for future use of the property. The grandfathering clause of the ordinance states that "the lawful *use* of * * * any land * * * *existing at the time of the effective date* of this ordinance * * * may be continued although such use does not conform* * *." (Emphasis added.)  The Boices could certainly have built a home on the property between 1974, when they purchased the two parcels, and 1978, when the new ordinance took effect.  They provided no evidence of seeking a variance for their

second parcel until 26 years after the ordinance's enactment, when they decided to sell their property.[3]

{¶ 35} Contrary to the majority's statement, the trial court did not determine that "a taking had not occurred because plaintiffs never took any affirmative steps to build a house on the lot." Majority opinion at ¶ 5. Instead, the court stated, "From 1974 until 2004, the only activity that took place on Parcel 3 was the Boices' use of it as open space and for their driveway." In other words, the trial court found that the Boices did not establish an *existing* nonconforming *use* that the ordinance would have allowed to be grandfathered in.

{¶ 36} I disagree with the majority's transformation of "expectations" into a legally cognizable actual "use." It is an overstatement to say that unless these expectations are protected, "landowners in Ohio would hold title to vacant land at their own peril subject to governmental regulations that can change overnight." Majority opinion at ¶ 17. This is not such a case. The Boices always used the 33,000-square-foot lot as a side lot for their 57,000-square-foot residence lot. They offered the lots for sale together, applying for a variance in 2004. After the variance was denied, they sold their residence lot separately, understanding that the side lot was not buildable. Essentially, they argue that the minimum-area ordinance should not be applied to them because when they bought the lot it was buildable and they expected it always would be. But expectations are not vested rights.

{¶ 37} This reading of the zoning ordinance does not conflict with *Norwood v. Horney*, 110 Ohio St.3d 353, 2006-Ohio-3799, 853 N.E.2d 1115, ¶ 34-38. While the right of property is a fundamental right and the rights associated with property are strongly protected by Ohio law, citizens of this state do not possess totally unfettered rights. One limitation is the ability of local

---

3. Moreover, the Boices never sought a reduction in their tax bill on the parcel based on its reduction in value.

governmental entities to enact zoning ordinances. We have long held that " '[p]roperty is held subject to the valid exercise of the police power of the State.' " *Curtiss v. Cleveland*, 166 Ohio St. 509, 521, 144 N.E.2d 177 (1957), quoting *Offutt v. Baltimore Cty. Bd. of Zoning Appeals,* 204 Md. 551, 562, 105 A.2d 219 (1954).

{¶ 38} To avoid enforcement of an ordinance on grounds of "nonconforming use," then, a property owner must establish that the use is actually in existence. The Boices cite *Negin v. Mentor Bd. of Bldg. & Zoning Appeals,* 69 Ohio St.2d 492, 433 N.E.2d 165 (1982), a plurality opinion, to support the idea that a nonconforming use may exist when an owner of an empty, undersized lot establishes that denial of a right to build would render the property useless. The concurring opinion in *Negin*, however, anticipated the present question:

> How can there be a nonconforming use for home construction when the land is vacant? A nonconforming use means a use "* * * which existed at the time of the passage of the zoning ordinance and continued thereafter without interruption and without material change * * *." *Akron v. Chapman* (1953), 160 Ohio St. 382, 116 N.E.2d 697, paragraph three of the syllabus.

*Id*. at 498 (Celebrezze, C.J., concurring.) Furthermore, we have explained:

> Where no substantial nonconforming use is made of property, *even though such use is contemplated* and money is expended in preliminary work to that end, a *property owner acquires no vested right to such use and is deprived of none* by the

operation of a valid zoning ordinance denying the right to proceed with his intended use of the property.

(Emphasis added.) *Smith* v. *Juillerat*, 161 Ohio St. 424, 119 N.E.2d 611 (1954), paragraph four of the syllabus.

{¶ 39} In diverging from the established zoning law of this state, the majority's reading would seem to invalidate any zoning amendments that could potentially affect existing property owners. This will profoundly damage the ability of municipal corporations to enact zoning laws. I would adhere to our previous zoning decisions and R.C. 713.15 in holding that the Boices cannot have their property "grandfathered in" under the ordinance because there was no existing nonconforming use to be grandfathered in.

*De minimis argument*

{¶ 40} The majority's "second pillar" supporting reversal is the belief that this situation involves a de minimis difference between the minimum lot size required by Ottawa Hills and the size of the Boices' lot. Regardless of the validity of this conclusion, this issue relates to whether Ottawa Hills properly refused a variance for the property. This issue was not raised below, and it is not raised in either proposition of law before this court. It is well established that we will not consider arguments that have not been raised prior to appeal to this court. *State v. Wirick*, 81 Ohio St. 343, 346-347, 90 N.E. 937 (1910). The Boices waived this issue, and it should not form a basis for this court's decision.

*Disparate-treatment argument*

{¶ 41} The majority's "third pillar" supporting reversal is that there was disparate treatment of residents in the village when it came to permitting houses to be built on lots smaller than 35,000 square feet. As noted, the Boices failed to raise the issue of disparate treatment until their second appeal to the Sixth District Court of Appeals. It is curious that the majority would base its decision upon an

16

issue that the court of appeals explicitly refused to address and that was not appealed. As with the de minimis argument, the disparate-treatment argument does not form a basis for reversal.

### III. Regulatory Taking

**{¶ 42}** The Boices' first proposition of law before us states that "[e]limination of the only permissible use of a parcel of residential property through regulation is a total regulatory taking." I would hold that this argument fails for two reasons. First, the Boices are procedurally barred from claiming a total regulatory taking. Second, even if we were to consider the Boices' claim of a total regulatory taking, none has occurred in this case.

*Waiver of claim of total regulatory taking*

**{¶ 43}** The United States Supreme Court has recognized two types of regulatory takings. *State ex rel. R.T.G., Inc. v. State*, 98 Ohio St.3d 1, 2002-Ohio-6716, 780 N.E.2d 998, ¶ 39. Total regulatory takings must be compensated. *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1026, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992). A total regulatory taking has occurred when a regulation deprives the property owner of all economically beneficial uses of the land. *See R.T.G.* at ¶ 37-39. If a regulation does not deprive property of *all* of its economic value, then the taking is only partial, and the analysis to be applied is set forth in *Penn Cent. Transp. Co. v. New York City*, 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978). *R.T.G.* at ¶ 39.

**{¶ 44}** On their initial appeal to the Sixth District, the Boices asked whether a regulatory taking occurs when the retroactive application of a new zoning statute causes a substantial—but not a total—diminution in fair market value of the affected property. They also asked who had the burden of proving that the retroactive application of the statute advanced legitimate state interests. In their brief, the Boices argued that the trial court "completely ignored U.S. Supreme Court decisions which provide that where governmental regulatory

action reduces the value of real property, there still can be a regulatory taking even though there has not been a total loss of value."

{¶ 45} In its decision, the court of appeals noted that the trial court viewed the taking claim under *Lucas*'s total-taking standards. 6th Dist. Lucas No. L-06-1208, 2007-Ohio-4471, ¶ 34. It then stated, "We find this to be in error because *appellants have never alleged a total regulatory taking*. Rather, the facts of the present case required an analysis under *Penn Central* and its progeny in that appellants essentially asserted that the zoning ordinance interfered with distinct investment-backed expectations." (Emphasis added.) *Id.* The court concluded that

the trial court erred in finding that no taking had occurred in appellees' enforcement of its zoning ordinance and denial of appellants' variance request, without first evaluating the case pursuant to the United States Supreme Court's standards set forth in *Lingle* [*v. Chevron U.S.A., Inc.,* 544 U.S. 528, 125 S.Ct. 2074, 161 L.Ed.2d 876 (2005)], supra and *Penn Central*, supra.

*Id.* at ¶ 35. It accordingly remanded the case for the trial court to reconsider the regulatory-takings issue in light of these standards.

{¶ 46} On remand, the trial court considered whether a partial regulatory taking had occurred under *Penn Cent.* and found that no such taking had occurred. In the second appeal, the Sixth District again viewed the allegations as asserting a partial regulatory taking: "As we discussed in *Boice I,* the taking alleged in this case falls under the category of regulatory takings challenges governed by the standards set forth in *Penn Central* * * *." 6th Dist. Lucas No. L-09-1253, 2011-Ohio-5681, ¶ 33.

18

{¶ 47} This procedural review reveals that the Boices never alleged a total regulatory taking until they raised it before us in their first proposition of law. This is not permitted. *State v. Wirick*, 81 Ohio St. at 346-347, 90 N.E. 937.

{¶ 48} Because the Boices have thus waived any argument related to total regulatory takings, I would affirm the judgment of the court of appeals.

*No unconstitutional regulatory taking*

{¶ 49} Even if the issue had not been waived and we were to analyze this case to determine whether a regulatory taking has occurred, the Boices still would not prevail.

{¶ 50} For a total regulatory taking to occur, the regulation must deny "all economically beneficial or productive use of land." *Lucas*, 505 U.S. at 1015, 112 S.Ct. 2886, 120 L.Ed.2d 798. Contrary to statements in the majority opinion, the lot is not "worthless." While it may be true that the ordinance decreased the property's market value by prohibiting construction, the trial court found the testimony of the village's expert more credible and valued the lot at $105,000, while even the Boices' own expert's "guesstimate" was $38,000.[4]

{¶ 51} In *Negin*, 69 Ohio St.2d at 496, 433 N.E.2d 165, a plurality of this court concluded that a regulation that has the effect of rendering a lot useless for any practical purpose totally restricts the property owner in the use of his property "in violation of constitutional guarantees." The plurality concluded that an ordinance's requirement that a landowner purchase additional property before he is permitted to improve a substandard lot rendered the substandard lot useless for any practical purpose, even if the lot could be sold to an adjacent land owner. *Id.*

---

4. Contrary to the majority's statement that the Boices' "investment had grown to a nest egg approximating a quarter of a million dollars in value until the village rendered it virtually worthless, causing the county to reduce its market value to $23,400," majority opinion at ¶ 17, the record shows that the Lucas County Auditor's valuation of the lot before it was reappraised in 2006 was $49,300. After the auditor reappraised the property at $233,500 in 2006, the Boices requested informal review, and on October 23, 2006, the auditor reduced the estimated value to $23,400. Thus, the Boices never paid property taxes on the inflated sum.

at 496-497. *Negin* does not, however, convince me that application of the zoning amendment in this case amounted to a taking. As a plurality opinion, *Negin* is of questionable precedential value because it "failed to receive the requisite support of four justices of this court in order to constitute controlling law." *Kraly v. Vannewkirk,* 69 Ohio St.3d 627, 633, 635 N.E.2d 323 (1994). Here, the zoning amendment did not deny all economically beneficial use of the lot, and therefore no total regulatory taking has occurred.

{¶ 52} Furthermore, even if the Boices had requested that this court review the Sixth District's analysis of their *partial* regulatory taking claim, an identical conclusion would be reached. In its opinion, the Sixth District had noted that the Boices failed to establish a negative economic impact and interference with distinct investment-backed expectations, two of the considerations, along with the character of the governmental action that must be considered in determining partial takings. *State ex rel. Shelly Materials, Inc. v. Clark Cty. Bd. of Commrs.*, 115 Ohio St.3d 337, 2007-Ohio-5022, 875 N.E.2d 59, ¶ 19.

{¶ 53} I agree with the court of appeals' explanation of its holding on the issue of unconstitutional taking:

> With regard to distinct investment-backed expectations in the present case, * * * the record is clear. The only "use" appellants ever intended for Parcel 2 was to sell it for a profit. Accordingly, the only loss appellants' [sic] have sustained from the zoning regulation and denial of variance, is the loss in market value. Because they themselves never intended to build a house on the property, they have not been denied an economically viable use. As noted above, "something more than the loss of market value or loss of the comfortable enjoyment of the property is needed to

constitute a taking." *State ex rel. Pitz* [*v. Columbus,* 56 Ohio App.3d 37] at 41, [564 N.E.2d 1081 (1988)].

> We, therefore, conclude that the lower court did not err in finding appellants failed to establish an unconstitutional taking in the proceedings below * * *.

2011-Ohio-5681, ¶ 40-41.

### IV. Conclusion

**{¶ 54}** The majority has reexamined the evidence before the zoning board and determined that a property owner's expectation of a parcel's being a "buildable lot" equates to a nonconforming use that vests rights in the owner. This conclusion is unwarranted by precedent. Furthermore, the discussion of disparate treatment and the de minimis difference in lot size rests on arguments that were waived by the Boices, as was their claim of a total regulatory taking. This court is not the place for new issues to be raised on appeal. I would affirm the judgment of the Sixth District Court of Appeals.

O'CONNOR, C.J., and FRENCH, J., concur in the foregoing opinion.

————————————

Barkan & Robon, Ltd., Marvin A. Robon, and Larry E. Yunker II, for appellants.

Maloney, McHugh & Kolodgy, Ltd., Sarah A. McHugh, and Emily C. Zillgitt, for appellees.

Michael DeWine, Attorney General, Alexandra T. Schimmer, Solicitor General, Michael J. Hendershot, Chief Deputy Solicitor, and Michael Stokes, Principal Assistant Attorney General, urging affirmance for amicus curiae state of Ohio.

John Gotherman; and Ice Miller L.L.P., Stephen J. Smith, Philip Hartmann, and Rebecca K. Schaltenbrand, urging affirmance for amicus curiae Ohio Municipal League.

_____